**TAX ANALYSTS, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Civ. A. No. 85–1878 SSH.**

United States District Court, District of Columbia.

March 15, 1991.

---

William A. Debrovir, Washington, D.C. and Thomas F. Field, Arlington, Va., for plaintiff.

Michael J. Kearns, U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiff's motion for an award of attorney's fees, pursuant to the Freedom of Information Act (FOIA), 5 U.S.C.A. § 552(a)(4)(E). Also before the Court is defendant's motion to strike plaintiff's supplemental memoranda and for sanctions.

On July 31, 1986, this Court granted summary judgment in favor of the defendant. *Tax Analysts v. United States Dept. of Justice*, 643 F.Supp. 740 (D.D.C. 1986). That decision subsequently was reversed by our Court of Appeals. *Tax Analysts v. United States Dept. of Justice*, 845 F.2d 1060 (D.C.Cir.1988). The Supreme Court affirmed the reversal on June 23,

1989. *United States Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989). The facts relevant to the underlying action have been set forth in all three published opinions and need not be repeated here.

The awarding of attorney's fees in a FOIA action is not automatic. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1367 (D.C.Cir. 1977). Rather, a trial court must decide, first, whether a party is eligible for an award of attorney's fees and, if so, whether the party is entitled to such an award. *Church of Scientology of California v. Harris*, 653 F.2d 584, 587 (D.C.Cir.1981). A party is eligible for attorney's fees if it has "substantially prevailed" in the action. 5 U.S.C.A. § 552(a)(4)(E); *Church of Scientology*, 653 F.2d at 587. It is clear, and in fact defendant concedes, that plaintiff has substantially prevailed in this action. Thus, a detailed analysis of plaintiff's eligibility is not warranted here, and the Court moves on to the question of plaintiff's entitlement to fees.

"[C]ourts award fees only when an award would serve FOIA's purposes of encouraging disclosures that are in the public interest and discouraging an agency's unreasonable withholding of information." *Alliance for Responsible CFC Policy, Inc. v. Costle*, 631 F.Supp. 1469, 1470 (D.D.C.1986). In deciding whether an award of attorney's fees is appropriate, the Court must consider at least four factors: "(1) the benefit to the public, if any, derived from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." *LaSalle Extension University v. Federal Trade Commission*, 627 F.2d 481, 483 (D.C.Cir.1980). The Court considers each factor in turn.

"[T]he 'public benefit' criterion 'speaks for an award [of attorneys' fees] where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices.'" *Fenster v. Brown*, 617 F.2d 740, 744 (D.C.

Cir.1979) (quoting *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir.1978)). After extensive reflection, the Court concludes that while some public benefit is derived from this case, the benefit is minimal. The Court has considered that Tax Analysts is a nonprofit organization that disseminates news and information in the area of federal tax law. Its principal publication, *Tax Notes*, has a readership of 3,000 subscribers, consisting primarily of tax lawyers, accountants, and economists. While these persons certainly are not representative of the general public per se, they, as a well-informed group, can and do provide an important service to a fair percentage of taxpayers. Indeed, our Court of Appeals has noted that the legislative history to the FOIA amendments which authorized attorney's fees indicates a preference for awarding fees to news organizations. *See Fenster*, 617 F.2d at 742 n. 4 (citing S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974), reprinted in House Comm. on Gov't Operations & Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Legislative History of the Freedom of Information Act Amendments of 1974, pt. 1, at 171 (Joint Comm.Print 1975)), U.S.Code Cong. & Admin.News 1974, 6267. However, the public benefit of plaintiff's scholarly publications should not be overstated. Its readership is not terribly wide, and there are several other publications that focus on tax issues.

Even more importantly, this case is different from most other FOIA cases involving news organization complainants. In this case, the complainant requested copies of district court decisions, which is information already in the public domain. While the Court of Appeals found that that fact was not legally relevant to the merits of the action, it is relevant in evaluating the public benefit in the attorney's fees context. As stated above, there is a benefit to having organizations such as Tax Analysts disseminate information. It logically follows that there is also some benefit to receiving the information soon after individual courts issue their decisions. However, in reality, the benefit of more prompt reporting of 25% of the district court decisions involving tax law is the only benefit the public can derive from this case. There is no question that, even prior to the institution of this litigation, the public had the benefit of access to all or most of this information, albeit not always in the preferred timely fashion. Thus, the Court concludes that while the public does stand to benefit from this litigation, that benefit is less than overwhelming. *Cf. Alliance for Responsible CFC Policy*, 631 F.Supp. at 1471 (in discounting public benefit derived from the case, court noted that plaintiff acknowledged that no new information was disclosed).

■ The Court now turns to the second and third factors—the commercial benefit to the complainant and the nature of the complainant's interest in the documents sought—which are closely related. *See Fenster*, 617 F.2d at 743. "The FOIA was fundamentally designed to inform the public and not to benefit private litigants." *Cuneo*, 553 F.2d at 1368. Thus, "[w]hen a complainant seeks disclosure of information for commercial benefit, an award of fees is generally inappropriate." *Fenster*, 617 F.2d at 743. Moreover, even if a party was not motivated by commercial gain, the Court may consider other personal motives that would serve as an incentive "to pursue the release of documents regardless of the availability of fees under FOIA." *Simon v. United States*, 587 F.Supp. 1029, 1032 (D.D.C.1984). "FOIA suits which are motivated by scholarly, journalistic, or public interest concerns are the proper recipients of fee awards." *Alliance for Responsible CFC Policy*, 631 F.Supp. at 1471. However, "[t]he touchstone of a court's discretionary decision under section 552(a)(4)(E) must be whether an award of attorney fees is necessary to implement the FOIA." *Nationwide Bldg. Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C.Cir.1977).

■ Tax Analysts argues that, in instituting this litigation, it had no expectation of commercial gain, and that, indeed, it made clear that it was securing easy access to the district court decisions for all tax publications. It also points out that it encouraged defendant to charge Tax Analysts the court clerks' 50 cents per copy,

rather than defendant's 10 cents per copy. These factors certainly weigh in plaintiff's favor. However, plaintiff also stressed at various points during the litigation that attempting to obtain the decisions from their sources was frustrating, cumbersome, and time consuming. And, as Justice Blackmun pointed out, "[t]he result of its now-successful effort in this litigation is to impose the cost of obtaining the court orders and opinions upon the Government and thus upon taxpayers generally." *Tax Analysts*, 109 S.Ct. at 2854 (Blackmun, J., dissenting).

Thus, when the Court looks more closely at this case, it is evident that plaintiff was not motivated simply by altruistic instincts, but rather by its desire for efficient, easy access to decisions. The information was already available, and would be disseminated in any event. Tax Analysts simply wished to make its job easier. Whether or not this should be considered a commercial interest, it certainly is a personal interest which could motivate plaintiff to bring this lawsuit absent the additional incentive of an award of attorney's fees.

■ The final factor which the Court must consider is whether the Government's withholding of the district court decisions had a reasonable basis in law. It would be rather disingenuous for this Court to hold that the Government had no reasonable basis for its position, considering that this Court, in a written opinion, decided the case in the Government's favor. The Court of Appeals, "find[ing] no clear precedent on the issue," wrote an opinion clarifying the law for this Circuit and noting, nevertheless, that the cost shifting result sought by Tax Analysts was "not the commonly perceived purpose of the FOIA." *Tax Ana-*

*lysts,* 845 F.2d at 1065–66. Moreover, it is doubtful that the Supreme Court would have granted certiorari and written an opinion in the case if the Government's position had not been at least reasonable. Certainly Justice Blackmun opined that "the language of the statute is not that clear or conclusive on the issue and, more important, ... the result the Court reache[d] cannot be one that was within the intent of Congress when the FOIA was enacted." *Tax Analysts*, 109 S.Ct. at 2853 (Blackmun, J., dissenting). Finally, the fact that the Government, in addition to making legal arguments, also appealed to the common sense of the jurists in the course of this litigation does not mean that its position lacked a reasonable basis in law, as plaintiff implies.

■ While the Court is required to include the four factors set forth above in its balancing test, it is not precluded from including other factors which it believes, in its discretion, are relevant.[1] Accordingly, the Court makes a further observation in this most unusual FOIA action. While the result sought by plaintiff may not have been "at odds with the goals of the FOIA," 845 F.2d at 1066 n. 13, the Court finds that it nevertheless was not the result Congress intended when it enacted the FOIA. *Cf.* 109 S.Ct. at 2854 (Blackmun, J., dissenting).[2] Although that conclusion may not be a factor in a decision on the merits of the action, the Court finds that now taking it into consideration, in addition to the four factors as set forth above, is warranted in this case.

The Court certainly is cognizant of the amount of effort and money that counsel has expended in this extended litigation.

---

**1.** "It should be noted that the criteria ... are intended to provide guidance and direction—not airtight standards—for courts to use in determining awards of fees." S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974), reprinted in House Comm. on Gov't Operations & Senate Comm. on the Judiciary, 94th Cong., 1st Sess., Legislative History of the Freedom of Information Act Amendments of 1974, pt. 1, at 171 (Joint Comm. Print 1975).

**2.** Specifically, Justice Blackmun stated:

This, I feel, is almost a gross misuse of the FOIA. What respondent demands, and what the Court permits, adds nothing whatsoever to public knowledge of government operations. That, I had thought, and the majority acknowledges, ... was the real purpose of the FOIA and the spirit in which the statute has been interpreted thus far. I also sense, I believe not unwarrantedly, a distinct lack of enthusiasm on the part of the majority for the result it reaches in this case.

109 S.Ct. at 2854 (citations omitted).

**32**

However, to allow this to weigh heavily in favor of an award would be to allow "the tail to wag the dog" at substantial expense to the taxpayers. After balancing all factors in light of the purpose of the FOIA and the attorney's fee provision, the Court concludes that an award of fees would be inappropriate in this case.

■ Turning finally to the Government's motion to strike plaintiff's supplemental memoranda and for sanctions, the Court does strike plaintiff's supplemental memorandum dated October 24, 1989. That memorandum details for the Court a case decided in 1982, well before the filing of plaintiff's application for fees. Plaintiff provides no reason why the case was not included in its application, nor did plaintiff seek leave of Court to file this supplemental memorandum. Plaintiff simply posits that because the Local Rules do not expressly forbid the filing of supplemental memoranda, and because the court and the clerk's office generally accept supplemental filings, the filing was proper. Plaintiff's argument, however, is overstated. It is true that this Court often accepts supplemental filings provided to apprise the Court of new developments that arguably could affect the Court's decision. However, plaintiff cannot seriously argue that parties have free rein to file whatever they may fancy, long after the issues are fully briefed under Local Rule 108. Such a practice would thwart the purpose of the rule.[3]

The Court will not, however, strike plaintiff's additional memoranda, because they do present recent legal developments. In addition, the Court will not sanction plain-

tiff, but will simply admonish counsel to keep future supplemental filings to a minimum, in the spirit of the Rules.[4]

An appropriate Order accompanies this Opinion.

## ORDER

Upon consideration of plaintiff's motion for an award of attorney's fees, defendant's opposition thereto, defendant's motion to strike plaintiff's supplemental memoranda and for sanctions, plaintiff's opposition thereto, and the entire record herein, for the reasons set forth in the accompanying Opinion, it hereby is

ORDERED, that plaintiff's motion for an award of attorney's fees is denied. It hereby further is

ORDERED, that defendant's motion to strike is granted as to plaintiff's October 24, 1989, memorandum, and denied as to all other memoranda. It hereby further is

ORDERED, that defendant's motion for sanctions is denied.

SO ORDERED.

---

**3.** Plaintiff also overstates the "authority" to be drawn from the clerk's office's acceptance of supplemental filings. Discussions with clerk's office personnel in this District indicate an administrative determination that requiring motions for leave to file supplemental memoranda, or, in the absence of such motions, asking the various judges to indicate whether leave to file is granted, was overly burdensome for the clerk's office, especially in light of the fact that the motions were often unopposed. Thus, the current policy is to allow such memoranda to be filed, and then to rely on the opposing party to file a motion to strike, or on the court to strike *sua sponte,* if it is warranted. The purpose of the policy is to shift the burden from the

clerk's office to the parties wishing to oppose or, in some cases, to the court.

**4.** Throughout the pendency of plaintiff's motion for an award of attorney's fees, plaintiff has made numerous requests for a ruling, growing more impatient with each request. The Court is aware of and understands the frustration of our civil litigants. However, faced with a bulging criminal caseload and countless civil cases requiring decisions on the merits, the Court simply did not consider plaintiff's rather voluminous request for attorney's fees to be as urgent as many other matters on its agenda.