**TAX ANALYSTS, Appellant,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Appellee.**

No. 91–5082.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1991.

Decided June 2, 1992.

William A. Dobrovir, Washington, D.C., for appellant.

Jonathan S. Cohen, Atty., Dept. of Justice, with whom Shirley D. Peterson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Gary R. Allen and Kevin M. Brown, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, HARRY T. EDWARDS and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Under the Freedom of Information Act, district courts "may" award attorney's fees and costs to members of the public who substantially prevail in FOIA litigation against the government. 5 U.S.C. § 552(a)(4)(E). In this case, the district court denied attorney's fees to appellant Tax Analysts which, after losing its FOIA case against the Justice Department in district court, prevailed in this Court and in the Supreme Court. Finding no abuse of discretion in the district court's decision, we affirm.

I

Tax Analysts publishes a weekly magazine, *Tax Notes*, which reports on federal tax law to a readership of tax attorneys, accountants and economists. As one of its regular features, *Tax Notes* provides summaries of recent federal-court decisions on tax issues. Tax Analysts also provides the full texts of those decisions in microfiche, and it publishes *Tax Notes Today*, a daily electronic data base that includes summaries and full texts of the federal-court tax decisions.

Twelve years ago, Tax Analysts filed a FOIA request asking the Justice Department to make available all district court tax decisions in the files of the Department's Tax Division. As a litigant in virtually all tax cases, the Tax Division receives copies of virtually all district court tax decisions. Tax Analysts had been unable quickly and consistently to obtain the tax decisions from the near 100 district courts throughout the country.

In 1985, after six years of fruitless negotiations with the Justice Department, Tax Analysts filed suit in district court, arguing that FOIA required the Department to give Tax Analysts access to the tax decisions in its files. The district court ruled in favor of the Justice Department, holding that the Department had not "improperly withheld" the tax decisions because those decisions are publicly available from the district courts that issue them. *Tax Analysts v. United States Dep't of Justice*, 643 F.Supp. 740 (D.D.C.1986). We reversed, finding that the tax decisions were "improperly withheld" because none of FOIA's disclosure exemptions permitted withholding the documents; we also ruled that the district court tax decisions in the Justice Department's files are "agency records" for purposes of FOIA. *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060 (D.C.Cir.1988). In *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989), the Supreme Court affirmed, holding that the district court tax decisions are "agency records" that were "improperly withheld."

After prevailing on the merits, Tax Analysts filed a petition for attorney's fees and costs in the district court. The court denied the request for attorney's fees, and Tax Analysts appealed.

II

Under FOIA, district courts "may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E). It is undisputed that Tax Analysts substantially prevailed and that the publisher is therefore *eligible* for attorney's fees. But a FOIA litigant seeking attorney's fees also "must show that he or she is '*entitled*' to an award." *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1495 (D.C.Cir.1984) (emphasis added). This Court has directed the district court to consider at least four criteria in determining whether a substantially prevailing FOIA litigant is entitled to attorney's fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding. *See Weisberg*, 745 F.2d at 1498; *Cuneo v. Rumsfeld*, 553

F.2d 1360, 1364 (D.C.Cir.1977); *see also* S.Rep. No. 854, 93rd Cong., 2d Sess. 17 (1974). The sifting of those criteria over the facts of a case is a matter of district court discretion, *see Church of Scientology v. Harris*, 653 F.2d 584, 590 (D.C.Cir.1981), and, despite Tax Analysts' arguments, we see no abuse of discretion here.

Considering the "public benefit" factor, the district court found that "while some public benefit is derived from this case, the benefit is minimal." 759 F.Supp. 28, 30 (1991). In favor of Tax Analysts, the district court observed that *Tax Notes'* readers "do provide an important service to a fair percentage of taxpayers," and that FOIA's legislative history "indicates a preference for awarding fees to news organizations." *Id.* But "the benefit of plaintiff's scholarly publications should not be overstated," the district court said, pointing out that *Tax Notes'* readership "is not terribly wide" and that several other publications focus on tax issues. *Id.* Even more important, in the district court's view, was the fact that Tax Analysts requested information already in the public domain. Although this Court and the Supreme Court found that fact to be irrelevant on the merits, the district court found it significant in the attorney's fees context. The fact that the information obtained was previously available publicly also distinguishes this case from most other FOIA cases involving news organizations, the district court said.

The district court acknowledged an advantage in receiving information about cases soon after they are decided. "However, in reality, the benefit of more prompt reporting of 25% of the district court decisions involving tax law is the only benefit the public can derive from this case." *Id.* Prior to the case, "the public had the benefit of access to all or most of this information, albeit not always in the preferred timely fashion." *Id.* The district court concluded, therefore, that the public benefit "is less than overwhelming." *Id.*

Tax Analysts takes issue with the district court's public-benefit analysis on two grounds; we find merit in neither. Tax Analysts asserts that the district court erred factually when it described the public benefit of disclosure as "prompt reporting of 25%" of district court tax decisions. The benefit was greater, in Tax Analysts' view, because obtaining 25% of the district court opinions in a timely manner had been much more difficult than the district court let on. But nothing Tax Analysts puts forward shows that there is a significant difference—indeed, any difference—between the district court's description and reality. Tax Analysts quotes, for example, from this Court's previous opinion: "securing the tax decisions rendered by the ninety-odd, far-flung federal district courts from their clerks' offices on any timely or regular basis has proven impossible." *Tax Analysts*, 845 F.2d at 1062–63. Tax Analysts underlines the word "impossible," as if to suggest that obtaining the opinions could not be done prior to Tax Analysts' victory. But the quote itself clearly refers to the impossibility of obtaining the opinions "on any timely or regular basis." *That* public benefit the district court recognized when it referred to Tax Analysts' success in assuring "prompt reporting of 25%" of district court tax opinions.

Tax Analysts also argues that the district court understated the public interest by ignoring the two public benefits we identified in our decision on the merits:

[1] by providing meaningful access to the Tax Division's enforcement record, disclosure of practically unavailable opinions in which it has been a party may actually serve Congress' intent " 'to open agency action to the light of public scrutiny.' " [2] Disclosure also serves the subsidiary FOIA purpose of providing public access to the storehouse of information that agencies gather in the course of government business.

*Tax Analysts*, 845 F.2d at 1066 n. 12. The district court, however, directly acknowledged the second of the two public interests when it referred to the benefit of providing *Tax Notes'* readers access to the information that had been in the Tax Division's storehouse. *See Tax Analysts*, 759 F.Supp. at 30. Although the district court did not specifically mention the first public

interest, it did make the key countervailing point—that district court tax decisions (and thus the Tax Division's enforcement record) were already in the public domain. We see no abuse of discretion in the district court's consideration of the first attorney's fees criteria.

■ As the district court pointed out, the factors of "commercial benefit" and "plaintiff's interest" are closely related and often considered together. *See Tax Analysts,* 759 F.Supp. at 30 (citing *Fenster v. Brown,* 617 F.2d 740, 743 (D.C.Cir.1979)). In summarizing the law on those factors, the district court correctly observed that " 'FOIA was fundamentally designed to inform the public and not to benefit private litigants.' " *Id.* (quoting *Cuneo,* 553 F.2d at 1368). FOIA's attorney's fees provision, to put it differently, was designed to lower the "often ... insurmountable barriers presented by court costs and attorney fees to the average person requesting information under the FOIA." *Cuneo,* 553 F.2d at 1363–64. Accordingly, when a litigant seeks disclosure for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate. *See Fenster,* 617 F.2d at 743; *La Salle Extension University v. FTC,* 627 F.2d 481, 484 (D.C.Cir.1980).

The district court found that Tax Analysts had a motive to bring its FOIA lawsuit independent of the attorney's fees incentive and that the second and third criteria therefore militated against an award of fees. "[I]t is evident," the district court said, "that plaintiff was not motivated simply by altruistic instincts, but rather by its desire for efficient, easy access to decisions." *Tax Analysts,* 759 F.Supp. at 31. The district court noted that the motive to obtain the documents might not have been strictly commercial—Tax Analysts was securing easy access to the opinions for all tax publications—but to suffice under the second and third factors, a motive need not be strictly commercial; any private interest will do. *See La Salle,* 627 F.2d at 484. And the district court concluded that Tax Analysts had sufficient private incentive to

seek disclosure of the documents and that, therefore, an award of attorney's fees was not necessary to promote FOIA litigation of the sort Tax Analysts pursued.

Tax Analysts attacks the district court for failing to recognize "the importance and dispositive weight of Tax Analysts' status as a news organization under the law." Although the government struggles to dispute the point, Tax Analysts is certainly a news organization. As the Supreme Court described, "Tax Analysts publishes a weekly magazine, *Tax Notes,* which reports on legislative, judicial, and regulatory developments in the field of federal taxation...." 492 U.S. at 139, 109 S.Ct. at 2844. And in this Court's description, "Tax Analysts is a nonprofit organization that disseminates news and information about federal tax law through a number of printed and electronic media." 845 F.2d at 1062. The fact that *Tax Notes'* readership is relatively small and largely composed of tax attorneys, accountants and economists is irrelevant to the point that Tax Analysts, which is in the business of disseminating information, is a news organization. As this Court said, interpreting broadly the reference to "news media" in the Freedom of Information Reform Act of 1986, "[a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. United States Dep't of Defense,* 880 F.2d 1381, 1387 (D.C.Cir.1989).

Not only is Tax Analysts a news organization, but it managed to obtain newsworthy information for its readers, some of which previously was not available promptly enough for those readers. The federal government is required to appeal tax cases within 60 days, and with its successful FOIA request Tax Analysts provided its readers the full text of district court tax decisions within the appeals period, something that previously could not be done for about one-quarter of the cases. That Tax

Analysts "was not motivated simply by altruistic instincts," 759 F.Supp at 31, obviously does not mean that Tax Analysts is not a news organization, as the government suggests. If newspapers and television news shows had to show the absence of commercial interests before they could win attorney's fees in FOIA cases, very few, if any, would ever prevail.

We have said (quoting a Senate Report on FOIA) that " 'news interests should not be considered commercial interests,' " and that " 'a court would generally award fees if the complainant's interest in the information was ... journalistic.' " *See Fenster*, 617 F.2d at 742 n. 4 (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). And FOIA's legislative history makes plain that Congress wanted news organizations to be treated favorably under the attorney's fee provision. But we are aware of nothing—and Tax Analysts offers nothing—that suggests that a litigant's status as a news organization renders an award of attorney's fees *automatic*, or that such a status renders irrelevant the news organization's other interests in the information. Indeed, we have suggested quite strongly that the contrary is true. "It is clear from the legislative history that Congress did not intend the award of attorney fees to be automatic," we said in *Cuneo*, 553 F.2d at 1367. And in *Fenster*, quoting language from the Senate Report immediately following its discussion of news organizations, we said " 'there will seldom be an award of attorney's fees when the suit is to advance the private commercial interest of the complainant' " because " '[t]he private self-interest motive of, and often pecuniary benefit to, the complainant will be sufficient to insure the vindication of the rights given in the FOIA.' " *Fenster*, 617 F.2d at 743 (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). That language in the legislative history and in our earlier opinions does not exclude news organizations. We believe that Congress left to the discretion of district courts the judgment on whether to award attorney's fees even to news organizations, leaving open the possibility that in some circumstances news organizations might not be entitled to fees. The

district court below, acknowledging that news organizations deserve preferential treatment under FOIA's attorney's fees provision, reasoned that the news organization before it was not entitled to attorney's fees because it did not need the attorney's fees incentive and because the material it obtained was already publicly available. Employing permissible reasoning, in other words, the district court found that *this* news organization should not receive attorney's fees. That is not prohibited by FOIA.

Tax Analysts challenges the district court's conclusion on the fourth criteria—that the Justice Department's denial of Tax Analysts' FOIA request had a reasonable basis in law. The district court acknowledged its odd position in considering this factor; its initial decision upholding the Justice Department's position was reversed by this Court and the Supreme Court. "It would be rather disingenuous," the district court said, "for this Court to hold that the Government had no reasonable basis for its position, considering that this Court, in a written opinion, decided the case in the Government's favor." *Tax Analysts*, 759 F.Supp. at 31. But the district court pointed out that the Court of Appeals, though it reversed, " '[found] no clear precedent on the issue' " and observed that disclosure in this case was " 'not the commonly perceived purpose of the FOIA.' " *Id.* (quoting *Tax Analysts*, 845 F.2d at 1065–66). In addition, the district court reasoned, the Supreme Court likely would not have granted certiorari or written an opinion if the government's position had no reasonable basis at all. *Id.* The district court also quoted from Justice Blackmun's dissent: " 'the language of the statute is not that clear or conclusive on the issue and, more important, ... the result the Court reache[d] cannot be one that was within the intent of Congress when the FOIA was enacted.' " *Id.* (quoting *Tax Analysts*, 492 U.S. at 156, 109 S.Ct. at 2853 (Blackmun, J., dissenting)).

Tax Analysts rebuts that our previous decision was unanimous, that only one Justice dissented in the Supreme Court, and

that the dissent "did not even suggest that there was 'law' to support the government's argument," but rather that Congress could not have intended such a gross misuse of FOIA. Although we agree that the government's position was weak, neither our unanimity nor the presence of only one dissent in the Supreme Court compels the conclusion that the government's position was baseless. Indeed, to accept Tax Analysts' argument would be to conclude that both Justice Blackmun's dissent and the district court's decision on the merits had no reasonable basis in law. That we are unwilling to do.

Moving beyond the line-ups in this Court and in the Supreme Court, Tax Analysts relies on what it says was government counsel's inability to construct a legal argument to support non-disclosure. It points out that in the Supreme Court the Deputy Solicitor General dwelt at length on administrative burden and inconvenience instead of legal argument. But we agree with the district court's response: "the fact that the Government ... appealed to the common sense of the jurists in the course of this litigation does not mean that its position lacked a reasonable basis in law." *Tax Analysts*, 759 F.Supp at 31. In any event, whatever the government lawyers did at oral argument, they clearly relied in their briefs on what Tax Analysts concedes are legal arguments.

Tax Analysts also asserts that the government's position was baseless because five Supreme Court decisions foreclosed the government's argument that it had not "improperly withheld" the documents and two Supreme Court decisions foreclosed the government's argument that the district court decisions were not "agency records." But that argument ignores our observation that no precedent resolved the "improperly withheld" issue, *see Tax Analysts*, 845 F.2d at 1065, and our statement that there is a "dearth of opinions, published or unpublished, dealing with comparable situations," *id.* n. 10. Also, while the Supreme Court did rely on the cases Tax Analysts refers to in rejecting the government's position, nowhere did the Supreme Court suggest that those cases

foreclosed the government's position. If so, the Supreme Court might have summarily affirmed or not bothered to grant certiorari in order to uphold the Court of Appeals' decision. To be sure, the mere granting of certiorari "carries with it no implication whatever" on the Court's views of the merits, *Maryland v. Baltimore Radio Show, Inc.*, 338 U.S. 912, 919, 70 S.Ct. 252, 255, 94 L.Ed. 562 (1950), and, standing alone, would not prove that a petitioner's legal position had a reasonable basis. But here, the granting of certiorari does not stand alone. The other facts we have mentioned support the district court's conclusion that the government's position had a reasonable basis in law.

■ Finally, we note that the reasonable-basis-in-law factor is intended to weed out those cases in which the government was "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Cuneo*, 553 F.2d at 1366. The record in this case suggests that the Justice Department fought Tax Analysts' FOIA request not out of obduracy but out of concern that it would "[i]mpos[e] an enormous and costly administrative burden on the Justice Department to secure already publicly available material." *Tax Analysts*, 845 F.2d at 1066. In these circumstances, the district court did not abuse its discretion in considering the fourth attorney's-fee factor.

## III

Our prior decision on the merits, affirmed by the Supreme Court, freed Tax Analysts from the difficult, time-consuming and costly exercise of obtaining district court tax opinions from district courts all over the country. In this case, the district court could find, "[t]hat is compensation enough." *Fenster*, 617 F.2d at 744. The denial of attorney's fees is

*Affirmed.*