Lynn D. ABERNETHY, Jr., Plaintiff,

v.

INTERNAL REVENUE SERVICE, Defendant.

Civil A. No. 1:94–CV–234–FMH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 20, 1995.

Benjamin A. Land, Buchanan & Land, Columbus, Georgia, for plaintiff.

Sharon Douglas Stokes, Lori M. Beranek, Office of the United States Attorney, Northern District of Georgia, Atlanta, Georgia, and Robert S. Attardo, phv-U.S. Atty., United States Department of Justice, Tax Division, Washington, DC, for defendant.

## ORDER

HULL, District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment [16–1] and Defendant's Motion for Summary Judgment [17–1]. The parties agree that the principal facts are not in dispute and that their Motions present questions of law. After reviewing the record and hearing oral argument from counsel for the parties, the Court finds as follows.

## I. FACTS

Plaintiff Lynn D. Abernethy, Jr. is an employee of the Defendant Internal Revenue Service ("the IRS"). In January, 1992, Plaintiff held the position of Group Manager of the Estate and Gift Tax Group, Examina-

tion Division, in the Atlanta District. Plaintiff claims the Defendant, as his employer, violated the Freedom of Information Act, 5 U.S.C. § 552 (1988), and the Privacy Act, 5 U.S.C. § 552(a) (1988), by withholding certain documents from the Plaintiff, by illegally maintaining other documents, and by improperly disclosing the contents of certain documents.

### A. Senator Sent Inquiries About Plaintiff to IRS

On February 7, 1992, Senator Sam Nunn forwarded to the IRS an anonymous letter, which his office had received, alleging that Plaintiff was a white supremacist. Attached to the anonymous allegation, and forwarded by Senator Nunn's office to the IRS, were copies of (1) a *Federal Times* newspaper article which quoted Plaintiff on the subject of reverse discrimination, and (2) a "Notice of Potential Class Action Complaint" posted by Plaintiff on a General Services Administration bulletin board in the IRS's Atlanta offices. Abernethy Dep.Tr., Exs. 1 & 2.

In response to Senator Nunn's letter, the IRS, through Paul Williams, the District Director for the Atlanta District, ordered an investigation into whether Plaintiff's personal views interfered with his responsibilities as a manager. An investigatory panel was convened. Plaintiff's performance appraisals were reviewed by the members of the investigatory panel and no one else.

On March 2, 1992, outside the IRS offices, District Director Paul Williams allegedly told another IRS employee, Louis Sheffield, that Plaintiff was being investigated, and that the investigation pertained to allegations of E.E.O. violations. According to Sheffield, Williams eventually again told Sheffield that Plaintiff was the subject of the investigation, and that the investigation involved "E.E.O. type allegations." Sheffield Dep.Tr. at 19–20.

On March 12, 1992, District Director Paul Williams reportedly made a similar statement in the presence of Glenn Misinco, another IRS employee. Misinco claims that he was in his IRS office in Macon, Georgia, speaking with his supervisor, Ronnie Smith, when Paul Williams arrived. Misinco testified that Williams "made certain comments directed basically toward Ron Smith ... about an investigation that was fixing to commence, or maybe had already commenced, regarding some E.E.O. complaints concerning Lynn Abernethy." Misinco Dep.Tr. at 9–10. Paul Williams denies that he ever made the alleged statements to Louis Sheffield and Glenn Misinco. However, for purposes of these summary judgment motions, the parties agree the Court should assume these statements were made.

On March 13, 1992, the investigatory panel reported that any evidence of purported discrimination by Plaintiff was inconclusive. On March 30, 1992, IRS District Director Paul Williams wrote Senator Sam Nunn to advise about the investigatory panel's findings.

### B. E.E.O. Complaint Against Plaintiff

In 1993, Jennifer Susan Clark, an attorney in the Estate and Gift Tax Group, Examination Division, in Atlanta, Georgia, filed an E.E.O. informal class complaint alleging that Plaintiff had created a working environment hostile to females. The E.E.O. Class Complaint Counselor for the Atlanta District gathered information concerning the Clark matter, including affidavits from current and former IRS employees.

IRS District Director Paul Williams appointed a five-member panel to review the Clark complaint and the file created by the E.E.O. Counselor and to make a recommendation for dealing with the matter. Judith B. Tomaso, the Acting Assistant District Director for the Atlanta District, was a member of the panel. After reviewing the file, the panel concluded that Plaintiff continuously and systematically harassed female employees, and recommended that Plaintiff be reassigned to a non-supervisory position.

On June 7, 1993, Ed Goss informed Plaintiff that he was being removed from management and reassigned to the position of Staff Attorney within the Estate and Gift Tax Group in Atlanta, Georgia. That day, Plaintiff informed the employees in the Estate and Gift Tax Group that he was being removed as their manager and the reason for his removal. Despite removal, Plaintiff's salary was not changed.

During a subsequent discussion between Paul Williams and Ed Watts concerning a

"revolt" (being led by two managers who worked under Watts) over the decision to remove Plaintiff Abernethy from management, Williams stated that the Clark file supported the conclusion that Plaintiff had created a hostile working environment, and that is why Plaintiff was removed from management.

### C. Plaintiff's Freedom of Information Act and Privacy Act Requests

#### 1. Count One: March, 1992 Investigation

Between March 2, 1992 and October 25, 1993, Plaintiff made numerous requests under the Freedom of Information Act ("F.O.I.A.") and the Privacy Act for access to documents related to the March, 1992 investigation and the June, 1993 reassignment. In response to Plaintiff's requests, the Defendant initially withheld ninety-six (96) pages of documents in full, withheld eight (8) pages in part, and released the remainder of the records responsive to Plaintiff's requests. On April 14, 1992, Plaintiff filed an administrative appeal of the partial denial of his requests with the National Office of the IRS. By letter dated January 11, 1994, the Office of Chief Counsel, Disclosure Litigation, denied Plaintiff's appeal.

On January 27, 1994, Plaintiff filed this Complaint to obtain the withheld documents. Subsequent to the filing of the Complaint, Defendant released all of the records previously withheld from the Plaintiff which are responsive to Plaintiff's requests.

#### 2. Count Two: 1993 Reassignment to Staff Attorney

On June 8, 1993 and October 25, 1993, Plaintiff made requests seeking access to records pertaining to and supporting the IRS's decision to reassign the Plaintiff to the position of staff attorney. The documents used by the IRS to determine that Plaintiff had created a working environment hostile to females consisted entirely of the documents contained in the E.E.O. Informal Class Complaint Counseling Report file. This file contains one hundred fifty-seven (157) pages of records.

Defendant IRS's original response to Plaintiff's June 8, 1993 request was to withhold all one hundred fifty-seven (157) pages in full. The Defendant withheld information pertaining to the 1992 and 1993 investigations of the Plaintiff, including statements provided by Abernethy's subordinates and former subordinates, based, in part, on 5 U.S.C. § 552(b)(6) and (7)(C).

On August 3, 1993, attorney Benjamin A. Land, on Plaintiff's behalf, filed an administrative appeal of the denial of the June 8 request. The Defendant had not processed this appeal when Plaintiff filed this Complaint.

Subsequently, Defendant released in full all but five (5) pages of the records contained in the E.E.O. Informal Class Complaint Counseling Report file. The Defendant withheld the name of a third-party taxpayer from each of the five (5) pages which were released in part, pursuant to 5 U.S.C. § 552(b)(3), in conjunction with Internal Revenue Code Section 6103.

The Defendant decided to release the two hundred sixty-one (261) pages of records only after the Defendant learned that the information which Defendant sought to protect had already been obtained by the Plaintiff pursuant to Plaintiff's requests for the production of documents in the Individual Right of Action Appeal and E.E.O. actions brought by the Plaintiff against the Defendant.

After the parties filed summary judgment motions in this action, the Defendant also released to Plaintiff a copy of the settlement agreement in the Clark E.E.O. informal class action which resulted in Plaintiff's removal from management.

### D. Count Three: Location of Documents Plaintiff Wants Expunged From All IRS Files

While Plaintiff now has obtained copies of all requested documents, Plaintiff also complains in Count Three that three specific documents in Defendant's files should be removed entirely from all IRS files: (a) the *Federal Times* newspaper article; (b) a "Notice of Potential Class Action Complaint" posted by Plaintiff on a bulletin board at Plaintiff's office building; and (c) a "Notice of Organizational Meeting" posted by Plaintiff on a bulletin board at Plaintiff's office building.

Copies of the July 8, 1991 *Federal Times* newspaper article are contained in four files

in the IRS Problem Resolution Office in Atlanta, Georgia. Senator Nunn wrote two letters to the IRS, with copies of the *Federal Times* article attached to both letters. Consequently, copies of the article are contained in two files pertaining to the congressional communications from Senator Nunn.

A copy of the "Notice of Potential Class Action Complaint" which Plaintiff posted in the IRS building in January, 1992 is contained in one file in the IRS Problem Resolution Office in Atlanta, Georgia. A copy of this notice was attached, along with the *Federal Times* article, to one of the letters which the Service received from Senator Sam Nunn.

The third Problem Resolution file which contains copies of the *Federal Times* article relates to an inquiry from Senator Trent Lott. As with Senator Nunn's inquiries, Senator Lott attached a copy of the *Federal Times* article to his letter, and consequently, a copy is contained in the Problem Resolution file.

The fourth Problem Resolution Office file to contain a copy of the *Federal Times* article is a file created in response to a congressional inquiry from Senator Thad Cochran. The *Federal Times* article was attached to a letter the Service received from Senator Cochran, and consequently is contained in the file associated with Senator Cochran's inquiry.

The *Federal Times* article and the "Notice of Potential Class Action Complaint" also are contained in several files maintained by General Legal Services. Both records are located in two files related to Individual Right of Action Appeals (Whistleblower Appeals) brought by the Plaintiff before the Merit System Protection Board. The *Federal Times* article and the "Notice" were placed in the files after Plaintiff submitted copies.

A copy of the *Federal Times* article also is contained in a G.L.S. file pertaining to an E.E.O. formal complaint in which Plaintiff was the complainant's representative. The attorney handling this E.E.O. matter believed that a conflict of interest might exist through Plaintiff's representation of the complainant, and received a copy of the article for this purpose.

A copy of the "Notice of Potential Class Action Complaint" is also contained in a G.L.S. file pertaining to the Service's investigation into whether the posting of the notice violated General Service Administration regulations and whether the notice was sufficiently business-related to warrant Plaintiff's use of his business telephone number.

The *Federal Times* article and the "Notice of Potential Class Action Complaint" also are contained in Report of Investigation files maintained by the Regional Complaints Centers in San Francisco and Dallas. The Plaintiff submitted copies of both the *Federal Times* article and the "Notice" to the San Francisco office. The Dallas IRS office has copies because the article and notice were contained in the Clark Informal Class Complaint Counseling Report, which is relevant to the subject matter of E.E.O. matters brought by the Plaintiff.

Finally, the *Federal Times* article and the "Notice" are contained in the Disclosure Office for the Atlanta District. Copies are also maintained in a file pertaining to Plaintiff's requests under the Freedom of Information and Privacy Acts.

## II. CONCLUSIONS OF LAW

### A. Counts One and Two

Counts One and Two of Plaintiff's Complaint seek access to records responsive to Plaintiff's numerous requests under the Freedom of Information and Privacy Acts. Upon receipt of Plaintiff's initial requests, Defendant released numerous documents but withheld certain documents. Subsequent to Plaintiff's filing this Complaint, the Defendant released all remaining documents responsive to the Plaintiff's F.O.I.A. and Privacy Act requests which comprise Count One of the Complaint. Therefore, the parties agree that Count One is now moot as to documents, but ripe for decision as to Plaintiff's claim for attorneys' fees. *See, e.g., Matter of Wade,* 969 F.2d 241, 248 (7th Cir.1992); *Tijerina v. Walters,* 821 F.2d 789, 799 (D.C.Cir.1987); *DeBold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir.1984); *Perry v. Block,* 684 F.2d 121, 125 (D.C.Cir.1982); *Crooker v. U.S. State Dep't,* 628 F.2d 9, 10 (D.C.Cir.1980).

With respect to Count Two, Defendant also released numerous documents but withheld certain documents. After Plaintiff's filing of this Complaint, Defendant released certain initially withheld documents because Plaintiff had obtained them anyway in a separate E.E.O.C. proceeding. After Motions for Summary Judgment were filed, Defendant also finally released the settlement agreement between the Defendant and the female employee who had filed the E.E.O. complaint against Plaintiff. After the hearing on the Motion for Summary Judgment, Defendant also released the Amy Campbell memo—the final document sought and identified in Count Two.

Thus, Defendant now has released all responsive documents covered by Count Two except for the identity of a third-party taxpayer, which was redacted from five (5) pages that were released only in part. Pursuant to Internal Revenue Code Section 6103(a), the IRS must keep the identity of the third-party taxpayer confidential. Section 6103(a), Internal Revenue Code of 1986 (26 U.S.C.). *See DeSalvo v. Internal Revenue Service,* 861 F.2d 1217, 1221 (10th Cir. 1988). Therefore, pursuant to Section 552(b)(3) of the Freedom of Information Act, the Defendant correctly withheld this information. 5 U.S.C. § 552(b)(3) (1988).

Count Two is also now moot for documents, leaving only Plaintiff's claim for attorneys' fees.

### B. *Attorneys' Fees*

■ With respect to Counts One and Two, Plaintiff seeks an award of attorneys' fees. The Privacy Act and Freedom of Information Act provide for the recovery of attorneys' fees to parties who substantially prevail in court. *See* 5 U.S.C. § 552(a)(4)(E) (1994); 5 U.S.C. § 552a(g)(3)(B) (1994); *Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1371 (5th Cir.1982). Under these Acts, whether a party has substantially prevailed is largely a question of causation. *Church of Scientology of California v. Harris,* 653 F.2d 584, 587 (D.C.Cir.1981). To establish eligibility, a requester must prove (1) that the prosecution of the action "could reasonably be regarded as necessary to obtain the information," and (2) that "the action had a substantial causative effect on the delivery of the information." *Chilivis v. Securities & Ex-*

*change Comm.,* 673 F.2d 1205, 1212 (11th Cir.1982); *Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980); *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir.1978); *see also Tax Analysts v. United States Dept. of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992); *Church of Scientology of California v. United States Postal Service,* 700 F.2d 486, 492 (9th Cir. 1983); *Cox v. United States Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir. 1977). The mere fact that records were released after the suit was filed, in and of itself, is insufficient to establish eligibility. *Chilivis,* 673 F.2d at 1212; *Lovell,* 630 F.2d at 432; *American Comm. Barge Lines Co. v. N.L.R.B.,* 758 F.2d 1109, 1112 (6th Cir.1985); *Weisberg v. United States Dept. of Justice,* 745 F.2d 1476, 1496 (D.C.Cir.1984); *Public Law Educ. Inst. v. United States Dept. of Justice,* 744 F.2d 181, 183 (D.C.Cir.1984); *Cox,* 601 F.2d at 6; *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2nd Cir.1976); *Mendez–Suarez v. Veles,* 698 F.Supp. 905, 907 (N.D.Ga.1988).

■ If eligibility is established, a determination must be made whether a requester is entitled to an award of attorneys' fees. This determination is left to the discretion of the court. *Lovell,* 630 F.2d at 431; *Blue,* 570 F.2d at 533; *Chesapeake Bay Foundation v. Dept. of Agriculture,* 11 F.3d 211, 216 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *Maynard v. Central Intelligence Agency,* 986 F.2d 547, 567 (1st Cir.1993); *Tax Analysts,* 965 F.2d at 1094; *Church of Scientology of California v. United States Postal Service,* 700 F.2d at 489; *Fenster v. Brown,* 617 F.2d 740, 742 (D.C.Cir.1979); *Cox,* 601 F.2d at 6; *Vermont Low Income Advocacy Council,* 546 F.2d at 513; *Mendez–Suarez,* 698 F.Supp. at 907–08. The burden is on the plaintiff to establish entitlement. *Weisberg,* 745 F.2d at 1495. An award of fees does not automatically follow a finding of eligibility. *Chesapeake Bay Foundation,* 11 F.3d at 216; *Chamberlain,* 589 F.2d at 842; *Cuneo,* 553 F.2d at 1365.

■ Courts consider these four factors in determining whether a requester is entitled to an award of attorneys' fees: (1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law. *Chilivis,* 673 F.2d at 1212; *Lovell,* 630 F.2d at 431–32; *Blue,* 570 F.2d at 533; *Maynard,* 986 F.2d at 568 n. 24; *Tax Analysts,* 965 F.2d at 1093; *Church of Scientology of California v. United States Postal Service,* 700 F.2d at 492; *Fenster,* 617 F.2d at 742; *Cox,* 601 F.2d at 6; *Chamberlain,* 589 F.2d at 842; *Cuneo,* 553 F.2d at 1364. These factors are not intended to be exclusive. S.Conf.Rep. No. 1200, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6288.

■ The principal purpose of both the Freedom of Information and the Privacy Acts is to "shed[ ] light on an agency's performance of its statutory duties" by providing access to agency records. *United States Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989). The first factor is not intended to always weigh in favor of an award "where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Blue,* 570 F.2d at 534. *See also Fenster,* 617 F.2d at 744. A grant of attorneys' fees is favored "when the suit advances a strong congressional policy." H.Rep. No. 876, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6272.

■ The legislative history of the 1974 amendments to the Freedom of Information Act reflects that Congress favored awards to public interest groups, indigents and disinterested scholars. *Blue,* 570 F.2d at 534 (citing S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)). Thus, when considering the first factor, courts focus attention on the degree of dissemination and likely public impact that might be expected from the production of the records sought by a particular plaintiff. *Church of Scientology of California v. United States Postal Service,* 700 F.2d at 493 (citing *Blue,* 570 F.2d at 533).

■ The second and third factors are closely related and are usually considered together. *Tax Analysts,* 965 F.2d at 1095. Congress also was concerned that the cost of litigation would discourage individuals from filing suits to enforce the F.O.I.A. *Tax Analysts,* 965 F.2d at 1095; *Blue,* 570 F.2d at 534; *Cuneo,* 553 F.2d at 1364 (citing S.Rep. No. 854, 93d Cong., 2d ·Sess. 17 (1974)). Therefore, attorneys' fees generally are not favored where a requester has a strong personal motivation for filing suit. *Tax Analysts,* 965 F.2d at 1095. A grant of attorneys' fees is disfavored when it would merely subsidize a matter of private concern.

■ The fourth and final factor can be determinative of the issue of attorneys' fees in cases, such as this one, where the federal agency decides to produce the requested records after the complaint is filed, but before the court orders production. Recent courts note that "although the test of entitlement involves a balance of several factors, there can be no doubt that a party is not entitled to fees if the Government's legal basis for withholding requested records is correct." *Chesapeake Bay Foundation,* 11 F.3d at 216 (citations omitted). *See Nationwide Building Maintenance, Inc. v. Sampson,* 559 F.2d 704, 712 n. 34 (D.C.Cir.1977); *Frydman v. Department of Justice,* 852 F.Supp. 1497, 1504 (D.Kan.1994). Thus, when courts conclude that the disclosed records otherwise were exempt from disclosure under the Acts, even though the agency waived the exemption, attorneys' fees will not be awarded. *Chesapeake Bay Foundation,* 11 F.3d at 216 (citations omitted); *Nationwide Building Maintenance,* 559 F.2d at 712 n. 34; *Frydman,* 852 F.Supp. at 1504. When courts conclude that the agency's claim of exemption was incorrect, but its position was "founded on a colorable basis in law," the fourth factor, balanced against the other three, weighs against an award of attorneys' fees. *Chesapeake Bay Foundation,* 11 F.3d at 216 (citations omitted); *Nationwide Building Maintenance,* 559 F.2d at 712 n. 34; *Frydman,* 852 F.Supp. at 1504.

In this case, the fact that records were released after the lawsuit was filed, in and of itself, is insufficient to establish Plaintiff's

eligibility for an award of attorneys' fees. *See Chilivis v. Securities & Exchange Comm.,* 673 F.2d 1205, 1212 (11th Cir.1982); *Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980). *Accord American Comm. Barge Lines Co. v. N.L.R.B.,* 758 F.2d 1109, 1112 (6th Cir.1985); *Weisberg v. United States Dept. of Justice,* 745 F.2d 1476, 1496 (D.C.Cir.1984); *Public Law Educ. Inst. v. United States Dept. of Justice,* 744 F.2d 181, 183 (D.C.Cir.1984); *Cox v. United States Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979); *Vermont Low Income Advocacy Council, Inc. v. Usery,* 546 F.2d 509, 513 (2d Cir. 1976); *Mendez–Suarez v. Veles,* 698 F.Supp. 905, 907 (N.D.Ga.1988).

■ The fact that Plaintiff readily obtained the same records through discovery in unrelated civil actions establishes that the filing of this lawsuit cannot be reasonably regarded as necessary to obtain the sought information. Nor did the filing of this action have a substantial causative effect on the agency's determination to produce the records as the documents were produced because Plaintiff obtained them elsewhere. *See Chilivis v. Securities & Exchange Comm.,* 673 F.2d 1205, 1212 (11th Cir.1982); *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.1979); *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir. 1978). *Accord Tax Analysts v. United States Dept. of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992); *Church of Scientology of California v. United States Postal Service,* 700 F.2d 486, 492 (9th Cir.1983); *Cox v. United States Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir.1977). Therefore, Plaintiff is not eligible for an award of attorneys' fees.

Alternatively, even assuming the lawsuit caused the Defendant's late production of the documents, the Court, in its discretion, declines to award attorneys' fees because the Plaintiff pursued this lawsuit for his own private interest in the information and has not identified any public interest in disclosure of the records. Plaintiff admits that the motivation for filing this lawsuit was a desire to discover "what [the March, 1992] investigation was about and what the investigative panel had found." Abernethy Decl. ¶¶ 6–13;

Plaintiff's Brief at 15. In addition, Plaintiff has filed several actions against the Defendant IRS pertaining to the March, 1992 investigation and the June, 1993 removal of Plaintiff from his management position with the IRS and has a need for the records in the prosecution of those actions. Plaintiff's strong personal motivation for filing this lawsuit outweighs any public interest which may result from disclosure to the Plaintiff of the requested records. *See* S.Conf.Rep. No. 1200, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6285, 6288. *See also Maynard v. Central Intelligence Agency,* 986 F.2d 547, 568 n. 24 (1st Cir.1993); *Tax Analysts v. United States Dept. of Justice,* 965 F.2d 1092, 1093 (D.C.Cir.1992); *Church of Scientology of California v. United States Postal Service,* 700 F.2d 486, 492 (9th Cir. 1983); *Chilivis v. Securities & Exchange Comm.,* 673 F.2d 1205, 1212 (11th Cir.1982); *Lovell v. Alderete,* 630 F.2d 428, 431–32 (5th Cir.1980); *Fenster v. Brown,* 617 F.2d 740, 742 (D.C.Cir.1979); *Cox v. United States Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979); *Chamberlain v. Kurtz,* 589 F.2d 827, 842 (5th Cir.1979), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Blue v. Bureau of Prisons,* 570 F.2d 529, 533 (5th Cir. 1978); *Cuneo v. Rumsfeld,* 553 F.2d 1360, 1364 (D.C.Cir.1977).

Finally, the Defendant's original decisions to withhold the records sought by Plaintiff were legally correct, or, at a minimum, were founded on a colorable basis in law. The privacy interests of Plaintiff's subordinates in the statements they gave to the investigatory panel and to the E.E.O. counselor outweigh any public interest in disclosure of this information. Therefore, the Defendant was legally justified in its initial decision to withhold the documents. *See L & C Marine Transport, Ltd. v. United States,* 740 F.2d 919, 922–23 (11th Cir.1984); *Halloran v. Veterans Admin.,* 874 F.2d 315, 318 (5th Cir.1989).

### C. Count Three

In Count Three, Plaintiff contends that the Defendant is now illegally maintaining records which describe how Plaintiff exercised rights guaranteed by the First Amendment, in violation of Section 552a(e)(7) of the Privacy Act. The Court finds that Defendant's

maintenance of these records in the various files in issue does not violate the Privacy Act for several reasons.

First, the record shows that Plaintiff authorized the maintenance of the documents at issue by submitting copies to various components of the Defendant IRS. Copies of the *Federal Times* article and the "Notice of Potential Class Action Complaint" are located in the Defendant's files because the Plaintiff submitted copies of those documents. Thus, Section 552a(e)(7) of the Privacy Act has not been violated in those instances. *See* 5 U.S.C. § 552a(e)(7) (1994). *Clarkson v. Internal Revenue Service,* 811 F.2d 1396, 1397 (11th Cir.1987). 40 Fed.Reg. at 28,965.

Secondly, Section 552a(e)(7) also was not violated in those instances where copies of the *Federal Times* article and the "Notice" are located in files of Defendant containing copies of records released to the Plaintiff in response to his numerous F.O.I.A. and Privacy Act requests. Defendant is authorized by statute to maintain copies of these documents as they are relevant to Defendant's processing of Plaintiff's requests under the F.O.I.A. and Privacy Act. Those Acts provide implied authorization to federal agencies to maintain copies for their own records of the documents which are released to requesters under those Acts. *See Hass v. United States Air Force,* 848 F.Supp. 926, 930–31 (D.Kan. 1994).

Thirdly, Defendant also must respond to Congressional inquiries. *See* IRM 1(15)29, Chapter 500, Congressional Communications. In carrying out this responsibility, several offices of Defendant maintain copies of the *Federal Times* article and the "Notice" in its files. This does not violate the Privacy Act.

Fourthly, maintenance of the *Federal Times* article and the "Notice" in files pertaining to the handling of E.E.O. cases by the Defendant is also not a violation of the Privacy Act. The documents are relevant to and pertinent to authorized law enforcement activities. *See* 5 U.S.C. § 552a(e)(7). *See also Clarkson v. Internal Revenue Service,* 678 F.2d 1368, 1379 (11th Cir.1982).

Finally, in those instances where copies of the *Federal Times* article and the "Notice of Potential Class Action Complaint" are located in Defendant's files concerning possible disciplinary action against Plaintiff, Section 552a(e)(7) has not been violated. It is valid for the Defendant to maintain copies for possible disciplinary purposes. *See Nagel v. United States Dept. of Health, Education & Welfare,* 725 F.2d 1438, 1441 (D.C.Cir.1984). As a result, Defendant's maintenance of the documents in those files does not violate the Privacy Act.

In any event, Plaintiff cannot demonstrate an adverse effect or willful or intentional conduct by the agency. *See Rose v. United States,* 905 F.2d 1257, 1260 (9th Cir.1990); *Andrews v. Veterans Admin. of the United States,* 838 F.2d 418, 424–425 (10th Cir.1988); *Wisdom v. Dept. of Housing & Urban Dev.,* 713 F.2d 422, 424 (8th Cir.1983); *Edison v. Dept. of the Army,* 672 F.2d 840, 846 (11th Cir.1982); *Fitzpatrick v. Internal Revenue Service,* 665 F.2d 327, 330–31 (11th Cir.1982); *Hass v. United States Air Force,* 848 F.Supp. 926, 932 (D.Kan.1994). Therefore, on any of these grounds, the Defendant is entitled to summary judgment with respect to Count Three.

### D. *Count Four*

In Count Four, Plaintiff seeks damages for five alleged violations of the Privacy Act's prohibition on disclosure. Plaintiff claims Defendant improperly disclosed the contents of records surrounding an investigation of Plaintiff and the subsequent removal of Plaintiff from his management position within the Defendant IRS.

For purposes of the Motions for Summary Judgment, the parties agreed the Court should assume *arguendo* that IRS District Director Paul Williams made the alleged statements to Messrs. Sheffield and Misinco. However, these statements, even if made, do not violate the Privacy Act because the information allegedly disclosed was not actually retrieved from a system of records. *See Kline v. Dept. of Health & Human Services,* 927 F.2d 522, 524 (10th Cir.1991); *Thomas v. United States Dept. of Energy,* 719 F.2d 342, 345 (10th Cir.1983); *Olberding v. United States Dept. of Defense,* 709 F.2d 621, 622 (8th Cir.1983); *Krowitz v. Dept. of Agriculture,* 641 F.Supp. 1536, 1543–45 (W.D.Mich. 1986); *Savarese v. United States Dept. of Health, Education & Welfare,* 479 F.Supp.

304, 307–08 (N.D.Ga.1979), *aff'd,* 620 F.2d 298 (5th Cir.1980); *King v. Califano,* 471 F.Supp. 180, 181 (D.D.C.1979).

 In addition, the March, 1992 panel's review of Plaintiff's performance appraisals was not a violation of the Privacy Act because the members had a need to know the contents of the appraisals. *See* 5 U.S.C. § 552a(b)(1). *See also Hernandez v. Alexander,* 671 F.2d 402, 410 (10th Cir.1982); *Hass v. United States Air Force,* 848 F.Supp. 926, 932 (D.Kan.1994).

Likewise, Judith Tomaso was a member of the panel which recommended that the Plaintiff be removed from management as a response to the Clark E.E.O. informal class complaint. Thus, as a member of that panel, Judith Tomaso had a need to know the contents of the Clark E.E.O. complaint file. In short, Tomaso's review of Plaintiff's performance appraisals was not a violation of the Privacy Act. *See* 5 U.S.C. § 552a(b)(1). *See also Hernandez v. Alexander,* 671 F.2d 402, 410 (10th Cir.1982); *Hass v. United States Air Force,* 848 F.Supp. 926, 932 (D.Kan. 1994).

 In addition, IRS District Director Paul Williams's statement to Watts was not a disclosure in violation of the Privacy Act because Watts was already aware of the information. *See Kline v. Dept. of Health & Human Services,* 927 F.2d 522, 524 (10th Cir.1991); *Hollis v. United States Dept. of the Army,* 856 F.2d 1541, 1545 (D.C.Cir. 1988); *Reyes v. Supervisor of D.E.A.,* 834 F.2d 1093, 1096 n. 1 (1st Cir.1987); *Schowengerdt v. General Dynamics Corp.,* 823 F.2d 1328, 1341 (9th Cir.1987); *Pellerin v. Veterans Admin. of the United States Government,* 790 F.2d 1553, 1556 (11th Cir.1986); *Federal Deposit Ins. Corp. v. Dye,* 642 F.2d 833, 836 (5th Cir.1981); *Krowitz v. Dept. of Agriculture,* 641 F.Supp. 1536, 1545 (W.D.Mich.1986); *King v. Califano,* 471 F.Supp. 180, 181 (D.D.C.1979).

 Finally, the Privacy Act was not violated when the Plaintiff informed the employees in the Estate and Gift Tax Group that Plaintiff was being removed from his position as their supervisor and the reason for the removal. The Plaintiff cannot sue Defendant IRS for disclosures which the Plaintiff made himself. *See* 5 U.S.C. § 552a(b) (1988).

Therefore, the Defendant is entitled to summary judgment on Plaintiff's Count Four.

### III. *CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment [17–1] and DENIES Plaintiff's Motion for Partial Summary Judgment [16–1]. The Court directs the Clerk to enter judgment in favor of the Defendant on Plaintiff's Complaint.

IT IS HEREBY ORDERED.