**Thomas W. SIKES, Plaintiff,**

v.

**UNITED STATES of America; United States Navy; United States Department of the Navy; Judge Advocate General; and Does 1–10, Defendants.**

Civil Action No. CV 312–045.

United States District Court,
S.D. Georgia,
Dublin Division.

Dec. 6, 2013.

John R. Hunt, Stokes, Roberts & Wagner, ALC, College Park, GA, H. Lehman Franklin, Jr., H. Lehman Franklin, Jr., PC, Statesboro, GA, for Plaintiff.

Melissa Stebbins Mundell, U.S. Attorney's Office, Savannah, GA, for Defendants.

**ORDER**

DUDLEY H. BOWEN, District Judge.

Presently before the Court in the captioned case are cross-motions for summary judgment by Defendants United States of America, United States Department of the Navy, Judge Advocate General, and Does One through Ten ("Defendants") (doc. no. 24), and by Plaintiff Thomas W. Sikes ("Plaintiff") (doc. no. 30). Upon due consideration and for the reasons set forth below, the parties' cross-motions are **DENIED IN PART** and **GRANTED IN PART.**

## I. BACKGROUND

Plaintiff brought this action pursuant to the Freedom of Information Act ("FOIA"), codified at 5 U.S.C. § 552 *et seq.*, to obtain documents and information alleged to be in the custody and control of the United States Department of the Navy. (Doc. no. 1.)

## A. Joint Stipulation of Facts [1]

### 1) Admiral Jeremy Michael Boorda

Jeremy Michael Boorda ("Admiral Boorda") was an admiral in the United States Navy. (Jt. Stip.¶ 1.) He served as Chief of Naval Operations ("CNO") [2] from April 23, 1994, until his death on May 16, 1996. (Id. ¶¶ 3, 6.) Admiral Boorda's career was notable in that he entered the United States Navy as an enlisted sailor and was the first CNO to not attend the United States Naval Academy. (Id. ¶ 2.)

On or about April 23, 1994, Admiral Boorda was sworn in as CNO. (Id. ¶ 3.) His Change of Command Ceremony occurred at the United States Naval Academy in Annapolis, Maryland. (Id.) Over 3,800 individuals were invited to attend the ceremony, including President William Clinton, Vice President Al Gore, Secretary of Navy John Dalton, Secretary of Defense William Perry, various United States congressmen, and other domestic and foreign dignitaries. (Id. ¶ 4; see id., Ex. I.) Six Navy video camera crews and four Navy photographers covered the ceremony. (Id.) In addition to the Navy's media coverage, a number of civilian news groups covered the event, including *The Washington Post*, *The Navy Times*, and *The Annapolis Capital Gazette*. (Id. ¶ 5.)

On May 16, 1996, Admiral Boorda was found dead at his home. (Id., Ex. B.) During an investigation of Admiral Boorda's death, the Naval Criminal Investigative Service ("NCIS") found "[s]everal memorandum notes, business cards, laminated cards containing telephone numbers, and a six page handwritten document which appear[ed] to be notes relating to official business" in his vehicle. (Id., Ex. B). The NCIS concluded that Admiral Boorda's death was a suicide. (Id. ¶ 6.)

### 2). FOIA Request 1

On August 26, 2011,[3] Plaintiff submitted two FOIA requests, seeking access to certain documents and information. (Id. ¶¶ 7–8; id., Exs. A–B.) Plaintiff filed the first FOIA request ("FOIA Request 1") "with the FOIA Officer at the [CNO]/Secretary of the Navy's FOIA Requester Service Center in Washington, DC." (Id. ¶ 7; id., Ex. A.) FOIA Request 1 sought "a complete list of all invitees and attendees for the April 24, 1994 CNO change of command ceremony, including individuals, their spouses, and the invitees' guests." [4] (Id.; id., Ex. A.) Initially, the Navy's representatives denied FOIA Request 1, claiming that they were unable to locate the requested information. (Id., Ex. E.) After Plaintiff had appealed this determination, however, the Office of the CNO notified Plaintiff that it had discovered the requested information at its Protocol Office and would release the materials after processing them. (Id. ¶ 13; id., Exs. G–H.) Nevertheless, more than half of the names on the invitation list were redacted; only the names of military servicemen at or above "flag-level" rank, "[c]elebrities with recognizable names," and persons with "strong honorifics" remained intact. (Id. ¶ 14; id., Exs. H–I.) The Office of the

---

**1.** (See Doc. no. 30, Ex. 1 ("Jt. Stip.").)

**2.** The CNO is a four-star admiral and the senior military officer of the Department of the Navy. See United States Department of the Navy, *Chief of Naval Operations: Responsibilities*, (last visited Nov. 14, 2013, 1:38 PM), http://www.navy.mil/navydata/leadership/cno_resp.asp.

**3.** These two requests come over fifteen years after Admiral Boorda's death.

**4.** Plaintiff later supplemented this request, indicating that the ceremony occurred on April 23, 1994. (Id., Ex. F.)

CNO informed Plaintiff that release of the names of individuals who did not hold "public facing roles" would be an "unwarranted invasion of their personal privacy" and that the names were therefore exempt from disclosure under 5 U.S.C. § 552(b)(6). (*id.* ¶ 14; *id.*, Ex. H.)

On February 25, 2012, Plaintiff appealed this determination to the Office of the Judge Advocate General ("Office of the JAG"). (*Id.* ¶ 16; *id.*, Ex. J.) On March 19, 2012, the Office of the JAG denied Plaintiff's appeal, concluding that the release of the redacted names would constitute an "unwarranted invasion of privacy." (*Id.* ¶ 20; *id.*, Exs. N–P.)

### 3) FOIA Request 2

Plaintiff's second FOIA request ("FOIA Request 2") sought access to the "[s]everal memorandum notes, business cards, laminated cards containing telephone numbers, and [ ] six page handwritten document which appear[ed] to be notes relating to official business" recovered by the NCIS from Admiral Boorda's car on the date of his death. (*Id.* ¶ 8; *id.*, Ex. B.) In response, the NCIS notified Plaintiff that the materials could not be released because they were "seized in the course of an investigation and entered into an evidence custody locker" and consequently were not "agency records" subject to disclosure under the FOIA. (*Id.* ¶ 23; *id.* Exs. O–R.) Plaintiff appealed this determination to the Office of the JAG on January 6, 2012. (*Id.* ¶ 25; *id.*, Ex. S.) On February 9, 2012, the Office of the JAG denied Plaintiff's appeal, concluding that the materials were "personal records" and not subject to the FOIA's disclosure requirements because they were "personal notes/items" created and possessed solely by Admiral Boorda. (*Id.* ¶ 26; *id.*, Ex. T.)

On June 27, 2012, Defendants subsequently provided Plaintiff "documents that ... were responsive to FOIA Request 2." (*Id.* ¶ 27; *see* Pl.'s Br. Supp. Summ. J., Ex. 3.) However, Defendants indicated that the requested documents were "discovered after the initial response to FOIA Request # 2." (Pl.'s Br. Supp. Summ. J., Ex. 3.)

### B. The Parties' Declarations

#### 1) Plaintiff's Declaration

Plaintiff states in his sworn declaration that he is a "writer who is interested in Admiral Boorda, his tenure as the Chief of Naval Operations, and the circumstances surrounding his apparent suicide." (Pl.'s Br. Supp. Summ. J., Ex. 2, ¶ 2.) He seeks to learn more about "the pressures affecting the CNO's Office" and believes that "many of the attendees at the swearing-in ceremony ... may have insight into Admiral Boorda's temperament, work patterns, and responses to stress, as well as the types of stressors extant in the CNO's office during the time period." (*Id.* ¶¶ 3–4.) He expects that "[m]any of the people on the guest list ... may have additional personal ties [to Admiral Boorda] that could shed light on his character, background, and possible reasons for his tragic suicide." (*Id.* ¶ 5.)

#### 2) Declaration of Robin Patterson

Defendants offer the declaration of Robin Patterson ("Patterson"), Head of the Privacy and Freedom of Information Act Policy Office of the CNO. (Defs.' Br. Supp. Summ. J., Ex. A.) Patterson's office is "responsible for processing FOIA requests on behalf of the both (sic) [CNO] and the Department of the Navy" and is the "highest level FOIA office within the U.S. Navy." (*Id.* ¶ 4.) Patterson asserts that his office acted properly in response to FOIA Request 1, explaining:

> [M]y office has a duty to not release personal information if release would be

a clearly unwarranted invasion of personal privacy, unless that privacy interest is outweighed by the public's interest.... As a general rule ... we will not release the names of individuals in lower ranks or the names of those who are not office directors unless doing so could in any way shed light on the U.S. Navy's performance of its statutory duties.... [S]ince Mr. Sikes was unable to present any plausible public interest in the names of the other lower ranking attendees, we redacted those names.

(*Id.* ¶ 8.)

### 3) *Declaration of Grant Lattin*

Defendants also offer the declaration of Grant Lattin ("Lattin"), Director of the General Litigation Division of the Office of the Judge Advocate General. (Defs.' Br. Supp. Summ. J., Ex. B.) Lattin's office "makes a final agency determination on approximately two-thirds of the FOIA appeals within the [Department of the Navy]." (*Id.* ¶ 2.) Lattin explains that Plaintiff's appeal of FOIA Request 1 was denied because the redacted names were "of no public interest." (*Id.* ¶ 8.) He echoes Patterson in that

the Department of the Navy has a duty to protect personal information if release would be a clearly unwarranted invasion of personal privacy, unless that privacy interest is outweighed by the public's interest ... As a general rule, Code 14 encourages U.S. Navy FOIA offices to ... not release the names of individuals in lower ranks or who are not office directors unless doing so could in any way shed light on the U.S. Navy's performance of its statutory duties.

(*Id.* ¶ 9.) Lattin asserts that neither his office nor Plaintiff identified "any possible public interest in the material...." (*Id.* ¶ 10.)

Regarding FOIA Request 2, Lattin's office upheld the NCIS's determination that the materials requested were not subject to disclosure under the FOIA. (*Id.* ¶ 11.) Lattin notes that "in determining whether a record is a personal record or an agency record an agency should examine the totality of the circumstances surrounding the creation, maintenance, and use of the record." (*Id.*) Lattin observed that the requested materials were Admiral Boorda's personal notes, have never been "submitted to the [Department of the Navy] for any official use[, and] were never made part of a [Department of the Navy] record." (*Id.*) Therefore, Lattin determined that the "NCIS properly withheld [the materials] from disclosure." (*Id.*)

### C. Procedural History

Plaintiff commenced this action on May 24, 2012, asking that the Court order Defendants to produce the requested documents; enjoin Defendants from improperly withholding the requested documents; award Plaintiff attorney's fees, litigation expenses, and costs; and provide for expedition of the proceedings. (Doc. no. 1.) On January 10, 2013, the Court denied Defendants' motion to dismiss with respect to Plaintiff's FOIA Request 1. (Doc. no. 17.) In addition, the Court found that Plaintiff's claim regarding FOIA Request 2 was moot, leaving the issue of the availability of attorney's fees for Request 2 pending. (*Id.*) On March 13, 2013, Defendants filed their motion for summary judgment. (Doc. no. 24.) In turn, Plaintiff filed his cross-motion for summary judgment on March 29, 2013. (Doc. no. 30.) The Clerk issued to all parties notice of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. nos. 26, 31.) Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied.

The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats*

*& Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark*, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick*, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evi-

dentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross,* 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

Where, as here, "the evidentiary facts are not disputed, a court in a non-jury case may grant summary judgment if trial would not enhance its ability to draw inferences and conclusions." [5] *Coats & Clark, Inc. v. Gay,* 755 F.2d 1506, 1510 (11th Cir.1985); *see* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 2720, 2725 (3d ed.2004). The instant case is ripe to be adjudicated on the merits.

### III. DISCUSSION

**A. Defendants United States of America, Judge Advocate General, and Does One through Ten**

Defendants submit that the United States Department of the Navy is the sole proper defendant in this action and that the remaining Defendants should be dismissed. Although the FOIA considers a "military department" an "agency," *see* 5 U.S.C. § 552(f)(1), Defendants argue the United States of America and the Judge Advocate General ("JAG") fall outside the

scope of this definition. Further, Defendants argue that Does One through Ten should be dismissed because the FOIA cannot be enforced against individuals. Plaintiff does not dispute these contentions.

■ The FOIA may be enforced only against "agencies." *See* 5 U.S.C. § 552(a)(3)(A). Further, the FOIA does not "create[ ] a cause of action for a suit against an individual employee of a federal agency." *Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987); *see Stewart v. Doe,* 2010 WL 4256186, at *2 (S.D.Ga. Sept. 29, 2010) ("Only federal agencies qualify as proper defendants in FOIA claims. Individual employees or officers of agencies are not appropriate defendants .... "), *report and recommendation adopted, Stewart v. United States Department of the Army,* 2010 WL 4256180 (S.D.Ga. Oct. 20, 2010). Here, the United States of America and Does One through Ten cannot properly be considered agencies and are not subject to the FOIA. Moreover, the JAG is an office within the Department of the Navy and therefore is not an agency as contemplated by the FOIA.[6]

Accordingly, with respect to Defendants United States of America, JAG, and Does One through Ten, Defendants' motion for summary judgment (doc. no. 24) is

---

**5.** Neither party demanded a jury trial within the requisite fourteen days "after the last pleading directed to the issue is served." Fed.R.Civ.P. 38(b). Were this case to proceed to trial, the Court would serve as the trier of fact. Fed.R.Civ.P. 39(b).

**6.** Further, the JAG must be dismissed from the action because the materials requested by Plaintiff never became an "agency record" under the JAG's control. For requested materials to qualify as "agency records," two requirements must be satisfied. First, "an agency must either create or obtain the requested materials as a prerequisite to its be-

coming an agency record within the meaning of the FOIA." *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (quotation marks and citation omitted). Second, "the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* at 145, 109 S.Ct. 2841. Here, there is no indication that the JAG ever created or obtained the attendees list. The JAG only acted in an adjudicatory capacity. Accordingly, even assuming that the JAG is an agency under the FOIA, it must still be dismissed from the present action.

**GRANTED.** The aforementioned Defendants are hereby **DISMISSED** from the present suit.[7]

## B. Plaintiff's FOIA Request 1

■ The FOIA seeks to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). The FOIA states that "each agency, upon any [valid] request for records ... shall make the records promptly available...." 5 U.S.C. § 552(a)(3)(A). However, "Congress realized that legitimate governmental and private interests could be harmed by certain types of information" and created nine exemptions from this general rule of disclosure. *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); *see* 5 U.S.C. § 552(b).

■ Consistent with FOIA's strong presumption in favor of disclosure, these exemptions must be narrowly interpreted. *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). Indeed, when a court faces a conflict between privacy and disclosure, it should "choose that interpretation most favoring disclosure." *Rose*, 425 U.S. at 366, 96 S.Ct. 1592. Courts determine the applicability of an exemption *de novo* so that agencies will not categorically withhold nonexempt matters. *Id.* at 379, 96 S.Ct. 1592; *see* 5 U.S.C. § 552(a)(4)(B). Moreover, the burden of proof is on the agency to demonstrate it has acted properly in withholding information. 5 U.S.C. § 552(a)(4)(B); *see United States Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991) ("[T]he strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents."). This burden is indeed "onerous." *News–Press v. United States Dep't of Homeland Sec.*, 489 F.3d 1173, 1198 (11th Cir.2007).

■ The pertinent exemption at issue in this case, Exemption 6, protects information from disclosure when it involves "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The application of Exemption 6 is a two-tier analysis. *News–Press*, 489 F.3d at 1196.

> [P]ersonal information in government agency files is exempt ... only if: (1) the information was within personnel, medical, or similar files; and (2) a balancing of individual privacy interests against the public interest in disclosure reveals that disclosure of the information would constitute a clearly unwarranted invasion of personal privacy.

*Id.* (internal quotations omitted). Here, the invitation list is not a medical or personnel file. Accordingly, the Court will consider whether the invitation list is a "similar file" under Exemption 6.

### 1) The "Similar Files" Prong

The Supreme Court has previously held, based on a searching review of the FOIA's legislative history, that the term "similar file" should be interpreted broadly to include "detailed Government records on an individual which can be identified as applying to that individual." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). Conversely, "[i]nformation unrelated to any particular person presumably would not satisfy the threshold test."

---

**7.** Accordingly, the parties are **DIRECTED** to reflect in the caption of their subsequent filings that the United States Department of the Navy is the only proper defendant to this action.

*Id.* at 602 n. 2, 102 S.Ct. 1957. This threshold inquiry should not limit Exemption 6 to "a narrow class of files containing only a discrete kind of personal information." *Id.; see also New York Times Co. v. NASA,* 920 F.2d 1002, 1006 (D.C.Cir.1990) ("[T]he threshold [for information to fall under the scope of a similar file] is 'minimal'. . . . The information need not be intimate; the threshold for application of Exemption 6 is crossed if the information merely 'applies to a particular individual.' " (citations omitted)). Indeed, "personnel and medical files, the two benchmarks for measuring the term 'similar files,' are likely to contain much information about a particular individual that is not intimate" but must still be analyzed under Exemption 6. *Washington Post Co.,* 456 U.S. at 600, 102 S.Ct. 1957.

Plaintiff submits that the Defendants have failed to meet this threshold inquiry. Plaintiff argues that an invitation list for a public function is not detailed Government records on an individual. Therefore, Plaintiff contends that the Court need not reach the question of whether disclosure of the list results in a clearly unwarranted invasion of personal privacy.

Defendants counter that the information sought contains names of private individuals. To Defendants, "there can be no legitimate argument that the name of a person is not linked to that individual." (Defs.' Rep. Supp. Summ. J., at 2.) Defendants observe that no case has allowed a FOIA request that seeks information about a particular private citizen and asks the Court to find that the information requested here is exempt from disclosure.

Here, the invitation list constitutes a "similar file" under Exemption 6. It is imperative that courts maintain a low threshold for consideration under Exemption 6.

[I]nformation that fails to cross that threshold must be released without regard to any invasion of personal privacy that may result, and without regard to whether there is a sufficient public interest in its release to warrant the harm caused by that invasion of privacy. A threshold that excludes too much would undermine what the Supreme Court described as the Congress's objective of "provid[ing] a proper balance between the protection of an individual's right of privacy and the preservation of the public's right to Government information."

*New York Times Co.,* 920 F.2d at 1006 (quoting H.R.Rep. No. 1497, at 11 (1966)); *see also Washington Post Co.,* 456 U.S. at 602 n. 4, 102 S.Ct. 1957 ("[T]here are undoubtedly many Government files which contain information not personal to any particular individual, the disclosure of which would nonetheless cause embarrassment to certain persons" and should be considered "similar files" under Exemption 6.).

The invitation list contains the requisite identifying information that renders it a "similar file": an individual's name. Especially where a list places an individual at an event or identifies one as undertaking an activity, it contains "information which applies to a particular individual." *Washington Post Co.,* 456 U.S. at 602, 102 S.Ct. 1957; *see also Sheet Metal Workers Int'l Ass'n, Local No. 9 v. United States Air Force,* 63 F.3d 994, 998 (10th Cir.1995) (finding that forms listing the names of individuals who worked in a particular field is a "similar file" subject to Exemption 6); *Reed v. NLRB,* 927 F.2d 1249, 1250–51 (D.C.Cir.1991) (finding that a list of names and addresses of all employees eligible to vote at union representative elections is a "similar file" subject to Exemption 6); *Wine Hobby U.S.A., Inc. v. United States IRS,* 502 F.2d 133, 134–35 (3d Cir.1974)

(finding that a list of names and addresses of individuals who had registered to produce wine for family use is a "similar file" subject to Exemption 6); *Nat'l Sec. News Serv. v. United States Dep't of Navy*, 584 F.Supp.2d 94, 96 (D.D.C.2008) (finding that lists of names of individuals who sought treatment at a hospital on two dates "clearly qualif[ied] as similar files" subject to Exemption 6).

*2) The "Unwarranted Invasion" Prong*

 Nevertheless, disclosure of the redacted names would not constitute a clearly unwarranted invasion of personal privacy. Here, Defendants' burden in showing that disclosure would constitute a "clearly unwarranted invasion of personal privacy" is onerous. *Cochran v. United States*, 770 F.2d 949, 955 (11th Cir.1985). Courts applying Exemption 6 must "balance the individual's right of privacy against [the FOIA's] basic policy of open[ing] agency action to the light of public scrutiny." *Ray*, 502 U.S. at 174, 112 S.Ct. 541 (citation omitted).

### a) Privacy Interests

Defendants argue that "Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature...." (Defs.' Br. Supp. Summ. J. at 11) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C.Cir.1989)). Defendants emphasize that an individual's priva-

cy interest in controlling the dissemination of his name is significant. (*Id.*) Further, Defendants contend that disclosure will subject individuals to unwanted interview requests by Plaintiff, especially since they "may *not* wish to be interviewed now about their relationships with [Admiral Boorda] or about his tragic death." (*Id.* at 12) (emphasis in original). Although Plaintiff seeks the names of individuals who were invited to a semi-public event, Defendants submit that these individuals "certainly [have] reasonable expectation[s] of privacy as to [their] own thoughts." (*Id.* at 14.)

In contrast, Plaintiff points out that an individual can decline an interview request. (Pl.'s Resp. Opp. Summ. J. at 12.) Plaintiff reasons that disclosure still preserves these individuals' personal thoughts and opinions regarding Admiral Boorda and that consequently "no significant privacy interest" has been implicated. (*Id.* at 13.) Moreover, Plaintiff contends that these individuals have no reasonable expectation to privacy in a list showing "who might attend an event," especially where that event was a "public ceremony that was extensively covered by newspapers, broadcast on television and attended by over two thousand people." (*Id.* at 13.) [8]

 The Supreme Court has observed, "Exemption 6 does not protect against disclosure every incidental invasion of privacy only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy." [9] *Rose*, 425 U.S. at 382, 96

---

**8.** Plaintiff also takes issue with the two declarations offered by Defendants. He claims that the declarants did not possess personal knowledge in making their assertions and offer legal conclusions not admissible in evidence. Plaintiff asks that these declarations be stricken for violating Federal Rule of Civil Procedure 56(c)(4). Although the Court ventures no ruling on the admissibility of Defendants' declarations, it will not place blind faith in the Department of the Navy's conclusions and will review them *de novo*. *See* 5

U.S.C. § 552(a)(4)(B); *see Rose*, 425 U.S. at 379, 96 S.Ct. 1592 ("Congress vested the courts with the responsibility ultimately to determine 'de novo' any dispute as to whether the exemption was properly invoked....").

**9.** That Congress inserted the language "clearly unwarranted" was a "considered and significant determination." *News–Press*, 489 F.3d at 1197.

S.Ct. 1592. In addition, third parties related to an object of scrutiny are also protected under Exemption 6. *Office of the Capital Collateral Counsel, N. Region of Fla. ex rel. Mordenti v. Dep't of Justice,* 331 F.3d 799, 804 (11th Cir.2003). Where, as here, the disclosure of information involves a list of names, "whether disclosure of a list of names is a significant or a de minimis threat [to personal privacy] depends upon the characteristics(s) revealed by the virtue of being on the particular list, and the consequences likely to ensue." *News–Press,* 489 F.3d at 1199 (quoting *Ray,* 502 U.S. at 176 n. 12, 112 S.Ct. 541).

The impact of the characteristics revealed on the invitation list is minimal. The list itself contains information regarding an individual's name, title, spouse's or guest's name (if applicable), and seating *zone* for the Change of Command Ceremony. (*See* Jt. Stip., Ex. I.) In addition, presence on the list simply indicates that an individual (1) likely attended the Change of Command Ceremony; and (2) worked with or knew Admiral Boorda or had close professional, diplomatic, or personal ties to the United States Navy. These characteristics are hardly spectacular. *See Avondale Indus., Inc. v. NLRB,* 90 F.3d 955, 961–62 (5th Cir.1996) (finding that voters who participated in a union election had a "negligible" privacy interest in keeping the "mere fact of their attendance at an election" private); *Getman v. NLRB,* 450 F.2d 670, 677 (D.C.Cir.1971) (concluding the impact of disclosure of the names and addresses of employees eligible to participate in union representative elections "very minimal"); *see also News–Press,* 489 F.3d at 1196 ("Congress'[s] primary purpose in enacting Exemption 6 was to protect individuals from the *injury and embarrassment* that can result from the *unnecessary* disclosure of *personal* information." (emphasis and alteration in original)); *Getman,* 450 F.2d 670, 675

("[T]he real thrust of Exemption (6) is to guard against unnecessary disclosure of files … which would contain 'intimate details' of a 'highly personal' nature. The giving of names and addresses is a very much lower degree of disclosure; in themselves a bare name and address give no information about an individual which is embarrassing.").

In addition, the consequences likely to ensue from disclosure are also de minimis. Allowing disclosure may result in Plaintiff asking listed individuals whether they would be willing to discuss Admiral Boorda's life, personality, and career. This impact upon an individual's privacy interests is slight. *See Getman,* 450 F.2d at 674–75 ("[A]lthough a limited number of employees will suffer an invasion of privacy in losing their anonymity and in being asked over the telephone if they would be willing to be interviewed in connection with [the study], the loss of privacy resulting from this particular disclosure should be characterized as relatively minor."). Significantly, disclosing the names does not expose an individual's private thoughts or feelings. *See Mordenti,* 331 F.3d at 803–04 (concluding that an individual's "private thoughts and feelings concerning her misconduct … and its effect on her, her family, and her career" implicates an "important private interest"). Rather, disclosure of the names simply shifts the control of personal information from the Department of the Navy to the individual. The individual may then choose whether to agree to or refuse an interview with Plaintiff. Neither result implicates privacy interests, so disclosure of the redacted names would not frustrate Congress's purpose in enacting Exemption 6.

Moreover, Defendants have not identified a reason why disclosure would result in "an unwanted barrage of mailings and personal solicitations." *See Horner,* 879

F.2d at 876. In addition, Defendants' contention that third parties may intrude upon individuals' privacy if Plaintiff publishes the redacted names in his book is speculative. *See Avondale*, 90 F.3d at 961–62 ("The [agency's] assertion that disclosure of these attendance lists will chill future voting is purely speculative, completely unsupported, and highly improbable."); *Getman*, 450 F.2d at 677 (finding that "the possible detrimental effects of the study in terms of delaying the election process [were] highly speculative")

Defendants are correct to note that "the fact that an event is not wholly 'private' does not mean that an individual has no interests in limiting disclosure or dissemination the information." *Mordenti*, 331 F.3d at 803. Nevertheless, the privacy interests here are minimal.[10] Accordingly, the Defendants have failed to establish anything greater than a de minimis invasion of privacy from disclosure of the redacted names.

### b) Public Interests

The "relevant public interest to be balanced against the private interests at stake is the core purpose of FOIA: 'to open agency to the light of public scrutiny.'" *Mordenti*, 331 F.3d at 803. The public has a right "to be informed about what their government is up to." *Ray*, 502 U.S. at 177, 112 S.Ct. 541. An informed citizenry is "vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *News–Press*, 489 F.3d at 1190. Conversely, there is "no public interest in disclosure of information about private citizens that reveals little or nothing about an agency's own conduct." *Judicial Watch, Inc. v. Bd.*

*of Governors of Fed. Reserve Sys.*, 773 F.Supp.2d 57, 61 (D.D.C.2011). When Exemption 6 is implicated, Plaintiff bears the burden of production to "indicate how disclosing the withheld information 'would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.'" *News–Press*, 489 F.3d at 1191. Nevertheless, the burden of persuasion remains on Defendants to prove that disclosure would amount to a "clearly unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(a)(4)(B); *Ray*, 502 U.S. at 173, 112 S.Ct. 541.

In asserting that a substantial public interest exists in favor of disclosure, Plaintiff observes that he is interested in learning about the pressures affecting the CNO's office during Admiral Boorda's tenure. (Pl.'s Br. Supp. Summ. J., Ex. 2). He believes that "[t]he identity of the attendees places Admiral Boorda's work life in a context that will provide insight both into [his] character and the individuals who influenced his work and personal life." (*Id.* at 15.) Plaintiff reiterates his hope to interview some of these individuals "to gain additional insights into both Admiral Boorda's character and the pressures of office that may have led to his tragic death." (*Id.*) Plaintiff concludes in asserting, "[P]reventing similar tragedies ... is surely" worthy of being considered in the public interest. (*Id.*)

In contrast, Defendants claim that there is no public interest in disclosure. Specifically, Defendants contend that "disclosure of the names of private persons and low-ranking Navy employees ... who attended the ceremony would reveal nothing about" the Navy's performance of its duties or

---

**10.** That FOIA Request 1 seeks information as to who was invited to a semi-public event further bolsters this conclusion. *See Rose*, 425 U.S. at 381 n. 19, 96 S.Ct. 1592 (explaining that the "clearly unwarranted" clause exists to protect an "individual's *private* affairs from Unnecessary (sic) public scrutiny" (emphasis added and citation omitted)).

what it is "up to." (Defs.' Br. Supp. Summ. J. at 10.) Further, Defendants contend that Plaintiff failed to articulate a significant public interest at issue. Plaintiff's personal interest in writing a book about Admiral Boorda, Defendants conclude, is not an interest shared by the public.

Here, the public interest in disclosure is significant. First, the Change of Command Ceremony was a highly publicized event conducted in the course of official Navy business.[11] In addition, over 3,800 individuals were invited to attend the Change of Command Ceremony. The invitation list provides a valuable cross-section of the stakeholders of the Office of the CNO and Admiral Boorda. Redaction of the names adulterates any useful analysis of this information. The public has a significant interest in being informed about *all* the individuals who were invited to the Change of Command Ceremony, not only those that the Department of the Navy deems important. *See News–Press*, 489 F.3d at 1191 (observing that the "core purpose of the FOIA [is to] contribut[e] significantly to the public understanding of the operations or activities of the government"). Indeed, Defendants' reluctance frustrates the FOIA's purpose in "pierc[ing] the veil of administrative secrecy and [opening] agency action to the light of public scrutiny." *See Ray*, 502 U.S. at 173, 112 S.Ct. 541.

In addition to the direct public interest advanced by disclosure, there is a significant public interest in Plaintiff's "derivative use" of the invitation list.[12] In accepting the position of CNO, Admiral Boorda agreed to carry a burdensome responsibility.

The [CNO] is the senior military officer of the Department of the Navy. The CNO is a four-star admiral and is responsible to the Secretary of the Navy for the command, utilization of resources, and operating efficiency of the operating forces of the Navy and the Navy shore activities assigned by the Secretary. A member of the Joint Chiefs of Staff, the CNO is the principal naval adviser to the President and the Secretary of the Navy on the conduct of wax, and is the principal adviser and naval executive to the Secretary on the conduct of activities of the Department of the Navy.[13]

Admiral Boorda's career was remarkable; his apparent suicide, disquieting. Admiral Boorda's death possibly leaves a number of unanswered questions regarding the pressures facing one of the most powerful and influential roles in the United States Navy. Allowing disclosure of the names on the invitation list will help identify those individuals who may provide valuable insight into Admiral Boorda's character and offer context to the events and pressures that led to his death. *See Getman*, 450 F.2d at 671–72 (permitting disclosure of a list of

---

11. Defendants rely on *Judicial Watch*, 773 F.Supp.2d at 57, in support of their position that Plaintiff has failed to articulate a public interest in disclosure. However, *Judicial Watch* is distinguishable. The names redacted in that case were individuals and entities visiting the Federal Reserve Board for personal reasons. The court found that the plaintiff failed to "point[ ] to any evidence in the record suggesting that [the] visits were not of a personal nature." *Id.* at 62. Therefore, since "the names of *personal visitors* reveal nothing

about the Board's activities or conduct, there is no public interest in their disclosure." *Id.* (emphasis added).

12. *See generally Ray*, 502 U.S. at 178–79, 112 S.Ct. 541. As explained *infra*, a derivative use theory is permissible under the specific facts of this case.

13. *Chief of Naval Operations: Responsibilities*, *supra*.

names and addresses of employees eligible to vote in certain representation elections to law professors seeking to interview employees before and after those elections). Moreover, the central purpose of the FOIA is to develop and ensure an informed citizenry, which is vital to "check[ing] against corruption and to hold the governors accountable to the governed." *News–Press*, 489 F.3d at 1190. Similarly, an informed citizenry is vital to ensure that this nation's servicemen and women are equipped with the right tools to confront the pressures that they face daily.

Additionally, Defendants fail to demonstrate that Admiral Boorda's tenure as CNO and the events surrounding his death have been sufficiently revealed to the public, which would have minimized the public interest in disclosure. *See News–Press*, 489 F.3d at 1191–92 (concluding that the agency failed to meet its burden in showing that disclosure of already public information "adequately served" the FOIA's purpose and that disclosure would "constitute a clearly unwarranted invasion of privacy"); *Mordenti*, 331 F.3d at 804 ("The public interest in knowing how [the government] responded to Cox's misconduct can be satisfied by ... other public information.... The roles of [third parties] in the events surrounding Cox's misconduct ... are already well enough known for the public interest in disclosure to have been satisfied.").

c) Balancing Public and Private Interests

In this matter, disclosure would not amount to a "clearly unwarranted invasion of personal privacy." Defendants have failed to demonstrate that disclosure would amount to anything greater than a de minimis invasion of personal privacy. Moreover, there is a valid public interest directly advanced by disclosure. Even if this public interest equates to the minimal invasion to privacy found here, Defendants'

showing fails to overcome "the strong presumption in favor of disclosure." *Ray*, 502 U.S. at 173, 112 S.Ct. 541.

Defendants argue that a more narrowly tailored request would be more appropriate than disclosure of the redacted names. However, this argument obscures the relevant inquiry of Exemption 6. All Exemption 6 asks is whether disclosure of the information sought in FOIA Request 1 would amount to a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

Moreover, consideration of the public interest in the derivative uses of the list bolsters the conclusion that disclosure is appropriate. In *Ray*, the agency urged the Supreme Court to disregard the derivative uses of requested documents in its Exemption 6 analysis. *Ray*, 502 U.S. at 178–79, 112 S.Ct. 541. The Supreme Court noted that "[m]ere speculation about hypothetical public benefits cannot outweigh a demonstrably significant invasion of privacy." *Id.* at 179, 112 S.Ct. 541. However, the Court declined to rule on the issue because there was no indication that any derivative use would "produce any relevant information that is not set forth in the documents that have already been produced." *Id.*

■ Although this Circuit has not addressed this issue, it appears that consideration of derivative uses is appropriate in certain circumstances. *See, e.g., Ray v. United States Dep't of Justice*, 852 F.Supp. 1558, 1565 (S.D.Fla.1994) (observing that the Supreme Court "declined to reject the derivative use theory in its entirety" and recognized "the public interest in allowing a derivative use of redacted information"); *cf. News–Press*, 489 F.3d at 1199 ("[W]hether disclosure of a list of names is a significant or a de minimis threat [to personal privacy] depends upon the characteristics(s) revealed by the vir-

tue of being on the particular list, and the *consequences likely to ensue.*" (emphasis added)). In addition, Defendants have failed to show any such "demonstrably significant invasion" of personal privacy to outweigh these derivative uses, and valuable information may result from disclosure.

 Upon due consideration of the foregoing, Defendants have failed to demonstrate that disclosure of the redacted names on the invitation list would amount to a "clearly unwarranted invasion of personal privacy."[14] Therefore, the FOIA mandates disclosure. Accordingly, with respect to Defendant United States Department of the Navy and to FOIA Request 1, Defendants' motion for summary judgment (doc. no. 24) is **DENIED,** and Plaintiff's cross-motion for summary judgment (doc. no. 30) is **GRANTED.**

## C. Attorney's Fees

Plaintiff also requests that the Court award him attorney's fees and litigation expenses for both FOIA Request 1 and Request 2.[15] The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any

case under this section in which [Plaintiff] has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff has "substantially prevailed if [he] has obtained relief through either—(I) a judicial order ...; or (II) a voluntary or unilateral change in position by the agency, if [the plaintiff's] claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii). It is undisputed that Plaintiff has "substantially prevailed" regarding FOIA Request 1.

*1) Whether Plaintiff Eligible for an Award of Attorney's Fees for FOIA Request 2*

 To show that he substantially prevailed on FOIA Request 2, Plaintiff must establish that "prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantial causative effect on the delivery of the information." *Chilivis v. S.E.C.,* 673 F.2d 1205, 1212 (11th Cir.1982). In other words, Plaintiff "must establish that the lawsuit provided the necessary impetus for disclosure." *Id.* Whether a party has substantially prevailed is a determination left to the discretion of the trial court. *Id.*

---

**14.** Defendants also refer to the Privacy Act, 5 U.S.C. § 552a, to support their contention that they were compelled to withhold the redacted names from the invitees list. The Privacy Act is designed "to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government and to outside individuals." *Cochran v. United States,* 770 F.2d 949, 954 (11th Cir.1985). Nevertheless, the Eleventh Circuit has observed, "Where FOIA requires disclosure, the Privacy Act will not stand in its way, but where FOIA would permit withholding under an exemption, the Privacy Act makes such withholding mandatory upon the agency." *News–Press,* 489 F.3d at 1189. The FOIA requires disclosure in this case, and consequently the Privacy Act will not bar disclosure.

**15.** Defendants attempt to defer their briefing on attorney's fees to what they consider would be a more convenient time. However, Defendants were well aware of the scope of Plaintiff's motion for summary judgment, including his request for attorney's fees and litigation expenses. As the parties opposing Plaintiff's motion, Defendants cannot simply defer argument; they must "present evidentiary matter showing that there is a genuine issue of material fact ... or else summary judgment ... may be entered against" them. Wright, Miller & Kane, 10A *Federal Practice and Procedure* § 2721. This, Defendants failed to do.

Here, Plaintiff has met his burden in establishing that the instant litigation was a necessary impetus for the disclosure of the materials sought in FOIA Request 2. First, there is a strong temporal nexus between the commencement of this suit and disclosure of the FOIA Request 2 materials. *See Lovell v. Alderete,* 630 F.2d 428, 432 (5th Cir.1980)[16] (noting that the temporal proximity between initiating the lawsuit and disclosure is relevant but not determinative). Defendants subsequently provided the requested materials to Plaintiff on June 27, 2012, little more than a month after Plaintiff filed suit.[17]

In addition, Defendants' inconsistent, if not disingenuous, justifications for withholding the materials suggests an inference that they withheld the requested materials in bad faith. In response to FOIA Request 2, the NCIS initially indicated that the materials could not be released because they were "seized in the course of an investigation and entered into an evidence custody locker" and consequently were not agency records for the purposes of FOIA.[18] On appeal, however, the Office of the JAG determined that the materials requested were personal records—"personal notes [or] items" created and possessed solely by Admiral Boorda—and not "agency records."[19] When releasing the requested materials to Plaintiff, Defendants offered a third excuse: that they only recently discovered the materials.[20] These conflicting explanations suggest that Defendants withheld the requested materials in bad faith until Plaintiff instituted this action against them. *See Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1496 (D.C.Cir.1984) ("[T]he causation inquiry [to determine whether a plaintiff has substantially prevailed] must take into account whether the agency ... made a good faith effort to search out material and to pass on whether it should be disclosed"); *LaSalle Extension University v. FTC,* 627 F.2d 481, 484 (D.C.Cir. 1980) (analyzing the legislative history of the FOIA and concluding that the attorney's fees provision generally would not justify a fee award to plaintiffs with a private, pecuniary interest in their FOIA request, "unless the government officials have been recalcitrant in their opposition to a valid claim or have been otherwise engaged in obdurate behavior" (quoting S.Rep. No. 854, at 19 (1974))).

**16.** *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as binding precedent all Fifth Circuit decisions rendered before October 1, 1981).

**17.** In contrast, approximately nine months separate Plaintiff's submission of FOIA Request 2 to Defendants and the commencement of this action.

**18.** However, the FOIA only requires that an "agency must first either create or obtain a record as a prerequisite to its becoming an 'agency record.'" *Forsham v. Harris,* 445 U.S. 169, 182, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980).

**19.** Again, the requirements for these materials to qualify as "agency records" has been met. *See Forsham,* 445 U.S. at 182, 100 S.Ct. 977. *Cf. Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 156, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (concluding that a FOIA request directed to the Department of State for Secretary of State Kissinger's notes of telephone conversations were not "agency records" because they were not in the State Department's control at any time, not created by the State Department, not used by the State Department, nor entered into the State Department's files).

**20.** The two FOIA requests at issue in this case were submitted over fifteen years after Admiral Boorda's death and its ensuing investigation. Standing alone, this third excuse would provide some support for Defendants' position. However, this overdue justification is insufficient to overcome the inference of bad faith arising from Defendants' shifting justifications for withholding the documents.

Further, Plaintiff has established that the lawsuit is not premature. Defendants rejected his request for disclosure, which the Office of the JAG subsequently upheld on appeal. *See Cazalas v. United States Dep't of Justice,* 660 F.2d 612, 620–21 (5th Cir.1981) (finding that a plaintiff is deemed to have exhausted all administrative remedies where the agency denies or refuses to provide the requested documents). Moreover, the extensive correspondence between Plaintiff and Defendants' representatives demonstrates that the instant case is not one of a plaintiff prematurely resorting to litigation to attain the requested materials. (*See generally* Jt. Stip., Exs. B, Q–W). In considering these factors, it is clear that litigation was necessary to achieve disclosure of the materials sought in FOIA Request 2. *See Miller v. United States Dep't of State,* 779 F.2d 1378, 1388 (8th Cir.1985) (holding that where the defendant repeatedly stated that it had few or no responsive documents to plaintiff's request until plaintiff instituted litigation, "the conclusion seems inescapable that but for the plaintiff's persistent prosecution of his claim he would not have received the documents which he did"). Finally, the records actually disclosed to Plaintiff appear to fully satisfy FOIA Request 2, and there is no indication that Defendants withheld any portion of the materials requested by Plaintiff.

Accordingly, Plaintiff has met his burden in establishing that he substantially prevailed regarding FOIA Request 2.

*2) Whether Plaintiff is Entitled to Receive Attorney's Fees for FOIA Request 1 and 2*

 Once a plaintiff has established that he has substantially prevailed and thus eligible for an award of attorney's fees, a court must then determine whether that party is *entitled* to an award of attor-

ney's fees. *See Lovell,* 630 F.2d at 431; *Abernethy v. I.R.S.,* 909 F.Supp. 1562, 1567 (N.D.Ga.1995). Whether a party is entitled to attorney's fees is a determination left to the discretion of the court. *See* 5 U.S.C. § 552(a)(4)(E)(i); *Lovell,* 630 F.2d at 431. The burden is on the Plaintiff to demonstrate that he is entitled to attorney's fees. *Abernethy,* 909 F.Supp. at 1567. In determining whether a plaintiff is entitled to attorney's fees, four factors are relevant:

> (1) the benefit to the public resulting from the FOIA request; (2) the commercial benefit to the plaintiff from the request; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the Government's justifications for nondisclosure.

*Chilivis,* 673 F.2d at 1212 n. 16.

 Here, Plaintiff has met his burden in proving that he is entitled to attorney's fees for both FOIA requests. As discussed *supra,* there is a significant benefit to the public by disclosing the materials and information at issue. First, the information requested in FOIA Request 1 provides a valuable cross-section of the stakeholders of the Office of the CNO. Second, the derivative uses of that information will identify those individuals who can provide valuable insight into Admiral Boorda and the pressures facing the Office of the CNO. Similarly, disclosure of the materials in FOIA Request 2 will also provide insight on the many pressures Admiral Boorda faced during his service as CNO and the continuing stressors facing that position. These insights can later be used to prevent tragedies like Admiral Boorda's suicide and better equip servicemen and women to face the pressures they face daily. Accordingly, the first factor militates toward awarding Plaintiff attorney's fees.

The second and third factors are closely related and usually are analyzed together. *Abernethy,* 909 F.Supp. at 1568. Admittedly, Plaintiff hopes to use the materials sought in FOIA Request 1 and Request 2 for a book on Admiral Boorda's life. and career. Plaintiff's interest in these materials is of a private nature, and Plaintiff stands to benefit commercially from disclosure of these materials. *See id.* ("A grant of attorneys' fees is disfavored when it would subsidize a matter of private concern.") Nevertheless, Plaintiff has also demonstrated his "scholarly or public-interest" motivations in writing about Admiral Boorda, which temper his private and commercial interests. *See Lovell,* 630 F.2d at 434; *see Davy v. Central Intelligence Agency,* 550 F.3d 1155, 1160 (D.C.Cir.2008) ("Surely every journalist or scholar may hope to earn a living plying his or her trade, but that alone cannot be sufficient to preclude an award of attorney's fees under FOIA."). Therefore, these two factors do not tip the analysis either in favor of or against an award of attorney's fees.

Finally, Plaintiff has established that Defendants' justifications for withholding the materials requested are not reasonable. As explained *supra,* Defendants have failed to justify their failure to release the materials requested in FOIA Request 1. Indeed, given the minimal privacy interests implicated and the strong public interests in disclosure, Defendants' position regarding FOIA Request 1 was "not founded on a colorable basis in law." *See Abernethy,* 909 F.Supp. at 1568. Moreover, Defendants' inconsistent and varying justifications for withholding the materials requested in FOIA Request 2 suggests that Defendants withheld the materials in bad faith. *See LaSalle,* 627 F.2d at 484 (awarding attorney's fees because the defendants "have been recalcitrant in their opposition to [the plaintiff's] valid claim [and] have been otherwise engaged in obdurate behavior" in refusing to release the materials sought). This fourth factor militates in favor of awarding Plaintiff attorney's fees. *See Abernethy,* 909 F.Supp. at 1568 (observing that this factor can be determinative in certain instances).

Upon due consideration of the foregoing, the Court concludes that Plaintiff is entitled to reasonable attorney's fees and expenses for both FOIA Request 1 and Request 2. Accordingly, Plaintiff's motion for summary judgment with respect to attorney's fees and litigation expenses for FOIA Request 1 and Request 2 as against Defendant United States Department of the Navy is **GRANTED.**

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion for summary judgment (doc. no. 24) is **GRANTED** with respect to Defendants United States of America, Judge Advocate General, and Does One through 10. These Defendants are hereby **DISMISSED** from the action. Defendants' motion is otherwise **DENIED.**

Plaintiff's motion for summary judgment (doc. no. 30) is **GRANTED** with respect to Defendant Department of the Navy. The Clerk is **DIRECTED** to **ENTER JUDGMENT** for Plaintiff and against Defendant Department of the Navy for the following relief: (1) Defendant Department of the Navy is hereby **ENJOINED** to supply Plaintiff with an unredacted invitation list for Admiral Boorda's Change of Command Ceremony, which occurred on or about April 23, 1994; and (2) Defendant Department of the Navy is **FURTHER ENJOINED** from withholding from the Plaintiff this document. The relief afforded hereby shall be accomplished within **fourteen (14) days** of the date of the Judgment.

It is **FURTHER ORDERED** that Plaintiff shall be awarded reasonable attorney's fees and costs reasonably incurred in pursuing this litigation against Defendants, as provided by 5 U.S.C. § 552(a)(4)(E). Plaintiff and his counsel are therefore **DIRECTED** to submit an appropriate, verified application for an award of reasonable attorney's fees and for reimbursement of expenses related to FOIA Request 1 and 2 within **fourteen (14 days)** of the date of this Order. Defendant Department of the Navy will then have **fourteen (14) days** from the date of Plaintiff's submission to file its objections, if any.